THE PEOPLE *ex rel.* Roy E. Gauen, State's Attorney, Plaintiff in Error, *vs.* HENRY NIEBRUEGGE *et al.* Defendants in Error.

*Opinion filed February 16, 1910.*

1. DRAINAGE—*power of court to change name of district.* Under section 12 of the Levee Drainage law, as amended in 1881, the county court had power, in organizing a drainage district, to change the name of the district at the same time and by the same order that the boundaries of the district were changed, upon recommendation of the commissioners.

2. SAME—*when order organizing a district cannot be attacked on quo warranto.* If the county court, in organizing a drainage district, had jurisdiction of the parties and the subject matter, the order organizing the district, even though it be erroneous, cannot be attacked by a proceeding in the nature of *quo warranto.*

3. SAME—*non-user of corporate powers does not work dissolution of district.* A drainage district, while it is not strictly a municipal corporation, is a public corporation, which can cease to exist only by legislative consent or pursuant to legislative provision, and mere non-user of its corporate powers for a period of years does not work a dissolution of the district.

4. SAME—*a drainage district can be dissolved only under the statute.* A drainage district can be dissolved only under the authority of the act of 1889, which authorizes dissolution of a district only when no indebtedness of such district exists, hence a drainage district having outstanding bonds cannot be dissolved, even on petition of the land owners.

5. SAME—*failure to elect commissioners for several years does not work dissolution.* Drainage commissioners duly chosen hold office until their successors are chosen and qualified, and if there is a failure for several years to choose commissioners, the county court may, under section 62 of the Levee act, appoint commissioners upon petition of land owners of the district.

WRIT OF ERROR to the Circuit Court of Monroe county; the Hon. GEORGE A. CROW, Judge, presiding.

ROY E. GAUEN, JOSHUA WILSON, and CHARLES ERD, for plaintiff in error.

A. C. BOLLINGER, for defendants in error.

Mr. JUSTICE CARTER delivered the opinion of the court:

This was an information in the nature of *quo warranto* filed by the State's attorney of Monroe county in the circuit court of said county on March 11, 1909, at the request of nine owners of lands, questioning the legality of the organization and existence of Moredock and Ivy Landing Drainage District No. 1 of Monroe county, Illinois, and the right of the defendants in error, Henry Niebruegge, William Feldmeier, Sr., and John Herbst, to hold the office of drainage commissioners of said district. Defendants in error entered their appearance and filed a plea to the information, to which plea plaintiff in error demurred. The demurrer was overruled and plaintiff in error elected to abide by his demurrer and declined to plead further. Thereupon the trial court entered judgment in favor of defendants in error, finding that they were not guilty of usurping the office of drainage commissioners, as charged in the information. Plaintiff in error has sued out of this court a writ of error to review the judgment.

By the demurrer the facts stated in the plea were admitted to be true. Do such facts present a good defense to the information?

It is first insisted that said drainage district was never organized in accordance with law. It is stated in the plea that on April 6, 1882, a petition was filed in the county court of said Monroe county proposing to establish a drainage district, to be known as Moredock and Fish Landing District No. 1, Monroe county, Illinois; that said petition

was signed by a majority of the adult land owners of said proposed district representing one-third or more in area of land, as required by the statute then in force; (Bradwell's Laws of 1879, sec. 2, p. 98;) that on May 15, 1882, the county court entered an order finding that due notice had been given as required by statute and the requirements of the law complied with, and that thereupon said court appointed three persons to act as commissioners; that thereafter, on October 16, 1882, said commissioners reported to the court recommending that the work be executed. This report was signed by these men as "commissioners of Moredock and Ivy Landing Drainage District No. 1 of Monroe county, Illinois." The plea further states that said Ivy Landing and Fish Landing were one and the same place, being synonymous terms, and from that time to the present all proceedings of said proposed district had been carried on under the name of "Moredock and Ivy Landing Drainage District No. 1 of Monroe county, Illinois;" that on November 20, 1882, the report of said commissioners was duly confirmed by the said county court after objections filed thereto had been overruled.

The Levee act, as enacted in 1879, did not provide for changing the name of a district. In 1881 section 12 of that act was amended, providing, among other things, "the court may change the name of a district, or proposed district, at the same time and in the same order establishing a drainage district, the boundaries of which shall have been changed as aforesaid." (Laws of 1881, p. 82.) This section as then amended, providing for changing the boundaries and amending the name, read substantially the same as section 12 of said act now reads. (Hurd's Stat. 1908, p. 820.) From the facts set up in the plea of defendants in error we think it is obvious that the court, in organizing the district, changed the boundary lines on the recommendations of the commissioners, and also changed the name by the same order. This the court had authority to do un-

der said amended section 12. Moreover, the plea further states that the district has been known by the name of Moredock and Ivy Landing Drainage District No. 1 ever since that time. Proceedings affecting the interests of that district have been twice brought to this court under that name. (*Gauen* v. *Moredock and Ivy Landing Drainage District,* 131 Ill. 446; *Winkelmann* v. *Moredock and Ivy Landing Drainage District,* 170 id. 37.) The plea also stated that the county court found, in the order organizing the district, that it had jurisdiction of the parties and the subject matter. Having such jurisdiction, the judgment order, even though erroneous, cannot be set aside by a proceeding in the nature of a *quo warranto.* *People* v. *Waite,* 213 Ill. 421; *People* v. *Munroe,* 227 id. 604.

It is next insisted that the rights and franchises of this district were dormant for many years, and that on that account a dissolution of the corporation should be declared and its charter forfeited. It appears from the facts set up in the plea that the district was in active operation from 1882 until 1897. At the last mentioned date three commissioners were acting. No annual reports were made by the commissioners thereafter until 1908. From the record of proceedings in the county court as to this district, as set out in said plea, it is not entirely clear whether any commissioners were appointed by the court from 1897 until 1908. In September of the year 1908 a petition was filed in the county court of Monroe county, signed by twenty-seven land owners of said district, requesting the court to appoint three persons as drainage commissioners. After a hearing on this question the court appointed the three defendants in error.

It has been held by this court that drainage districts should be classed as municipal corporations. (*Commissioners of Drainage District* v. *Kelsey,* 120 Ill. 482; *Elmore* v. *Drainage Comrs.* 135 id. 269; *Badger* v. *Inlet Drainage District,* 141 id. 540.) In Dillon on Municipal

Corporations (vol. 1, 4th ed. sec. 168, p. 245,) that author states that the doctrine of forfeiture of the right to be a corporation has no just or proper application to municipal corporations, and "if they neglect to use powers in which the public or individuals have an interest, and the exercise of such powers be not discretionary, the courts will interfere and compel them to do their duty. On the other hand, acts done beyond the powers granted are void. * * * In short, unless otherwise specially provided by the legislature, the nature and constitution of our municipal corporations, as well as the purposes they are created to subserve, are such that they can, in the author's judgment, only be dissolved by the legislature or pursuant to legislative enactment. They may become inert or dormant, or their functions may be suspended for want of officers or of inhabitants; but dissolved, when created by an act of the legislature and once in existence, they cannot be by reason of any default or abuse of the powers conferred, either on the part of officers or inhabitants of the incorporated place. As they can exist only by legislative sanction, so they can not be dissolved or cease to exist except by legislative consent or pursuant to legislative provision." Municipal corporations can cease to exist only by legislative consent or pursuant to legislative provision, and a failure for a term of years to exercise the functions of a municipality does not effect a dissolution. (*Cain* v. *Brown,* 111 Mich. 657; *State* v. *Stevens,* 21 Kan. 210.) A public corporation is not dissolved by failure to elect officers. (*People* v. *Wren,* 4 Scam. 269; *President and Trustees* v. *Thompson,* 20 Ill. 197; *People* v. *Town of Fairbury,* 51 id. 149; *School Directors* v. *School Directors,* 135 id. 464; 1 Smith on Corp.—1903 ed.—sec. 479, p. 446.) Municipal corporations are subject to legislative control, and may be changed, modified, restrained or abolished to suit the exigencies of the case. (*City of Chicago* v. *Town of Cicero,* 210 Ill. 290, and cases cited.) While drainage districts may not

be strictly municipal corporations, they are public corporations, (*People* v. *Anderson*, 239 Ill. 266; *People* v. *Hepler*, 240 id. 196;) organized for a special and limited purpose. (*Elmore* v. *Drainage Comrs. supra.*) They are created by the statute, and we think, on reason and authority, the rules of law governing the dissolution of municipal corporations must be held to apply to drainage districts.

In 1889 an act was passed authorizing the dissolution of any drainage district by order of the county court of the county wherein the same was organized, upon a hearing upon a verified petition signed by not less than four-fifths of the adult land owners of such district, owning not less than three-fourths of the assessed land. (Hurd's Stat. 1908, par. 191, p. 876.) We think it is obvious, not only from the authorities on this subject but from the provisions of the Levee act and of the act just referred to, that the legislature did not intend that the district should be dissolved except in the manner provided by the said act of 1889. It is not claimed that any attempt has been made, under said provision of the statute, to dissolve this district. It is further provided in section 1 of the act for the dissolution of drainage districts that they can be dissolved only when "no indebtedness of such district exists." The plea filed in the court below stated that the aggregate sum collected for the execution of drainage work was $31,-537.79 and that there had been expended for the work the aggregate sum of $41,000, and that to secure the funds to complete said work, bonds were issued by said district, some of which were still outstanding and unpaid. On this state of facts the district could not be dissolved by the court, even on the petition of the necessary property owners, until these bonds were paid.

The district did not forfeit its corporate powers by non-user. Neither, as we have seen, was the corporation dissolved by failure to elect officers. The drainage commissioners appointed in 1895 and 1897 continued in office

until their successors were chosen and qualified. (*Trustees of Schools* v. *Cowden,* 240 Ill. 39; *People* v. *Morrell,* 234 id. 47.) The county court had the authority to appoint, as it did, the defendants in error commissioners under section 62 of the said Levee act. (Hurd's Stat. 1908, p. 838.)

We find no reversible error in the record. The judgment of the circuit court will therefore be affirmed.

*Judgment affirmed.*