THE PEOPLE *ex rel.* William H. Kidd *et al.* Defendants in Error, *vs.* JOHN E. CROWLEY *et al.* Plaintiffs in Error.

*Opinion filed April 19, 1911—Rehearing denied June 8, 1911.*

1. DRAINAGE—*when parties cannot rely on objection that meetings to organize district were held outside its limits.* Land owners who participate in the organization of a drainage district can not, after standing by until assessments are levied, the contract is let and large expenditures are incurred, attack the organization of the district upon the ground that the meetings of the highway commissioners to organize the district, in which they participated, were held outside the limits of the district.

2. SAME—*when land owners cannot question election of drainage commissioners.* Land owners who participate in the election of drainage commissioners and recognize its validity by thereafter taking part in the organization of the district and the subsequent proceedings, cannot, after the work is practically completed, attack the election of the commissioners upon the ground that the law under which the election was held had then been repealed, particularly where the law was re-enacted at a later period and the commissioners elected thereunder.

3. QUO WARRANTO—*not every departure from law in organizing drainage district will warrant judgment of ouster.* Not every departure from the law in the organization and conduct of a drainage district or the use of its franchises will justify an order, in a *quo warranto* proceeding, ousting the commissioners from office.

4. SAME—*remedy by information in quo warranto is not a matter of absolute right.* The remedy by an information in the nature of *quo warranto* is not a matter of absolute right, and if the in-

terest of the People is merely nominal the court may decline to enter a judgment of ouster upon the ground of acquiescence or unreasonable delay by the persons complaining or from considerations of public interest or convenience.

WRIT OF ERROR to the Circuit Court of LaSalle county; the Hon. RICHARD M. SKINNER, Judge, presiding.

CRAIG & CRAIG, and BUTTERS & ARMSTRONG, for plaintiffs in error.

CHARLES S. CULLEN, State's Attorney, (LESTER H. STRAWN, and L. W. BREWER, of counsel,) for defendants in error.

Mr. JUSTICE CARTER delivered the opinion of the court:

On leave granted by the circuit court the State's attorney of LaSalle county filed an information in the nature of a *quo warranto* on August 22, 1905, alleging that the plaintiffs in error held and executed, without warrant, the offices of commissioners of an alleged drainage district of the town of Ophir, in that county. June 22, 1906, by leave of court, additional counts were filed to the information, in which it was charged that the said plaintiffs in error were usurping certain franchises. Various pleas, replications, demurrers and certain motions were filed, and the cause was many times set for trial and many times passed or continued when reached for trial. Finally, on April 6, 1910, by leave of court, plaintiffs in error filed two pleas, which were substantially identical in form except as to the conclusion. The trial court sustained demurrers to said pleas on said last mentioned date, and entered an order finding that the plaintiffs in error were guilty of usurping, without authority, the franchises and offices described in said information and that the supposed drainage district was without any franchise or legal existence; that plaintiffs in error be forthwith ousted from exercising the offices of

drainage commissioners and that each pay a fine of one dollar. This writ of error is sued out to reverse that judgment.

The pleas upon which the case was disposed of set out the steps taken in the organization of the drainage district, alleging that December 17, 1904, a petition was addressed to the drainage (highway) commissioners of the town of Ophir asking for the organization of the district; that at a meeting held in the town clerk's office December 28, 1904, by said highway commissioners, affidavits were filed stating that the majority of the adult land owners of the lands comprising the proposed district had signed the petition, representing more than one-third of the lands; that said meeting was adjourned by the said commissioners to meet January 11, 1905; that in the meantime the commissioners personally examined the proposed drainage district and employed a civil engineer to make a survey and an estimate of the costs; that they met at said adjourned meeting January 11, 1905, and again adjourned, to January 25, 1905, and that at said last mentioned meeting they entered an order declaring said drainage district fully organized and describing its boundaries; that on February 23, 1905, the town clerk called an election to be held March 1, 1905, for the election of drainage commissioners, at which election William H. Kidd, one of the relators, received the same number of votes as the plaintiff in error John E. Crowley; that Kidd and Crowley cast lots, and Crowley drew the lot entitling him to be declared elected; that all of said relators were present, either in person or by attorney, at said meeting of December 28, 1904, and made no objections to the legal sufficiency of said petition; that in May, 1905, the right of way across the lands of Levi Carr, one of the relators, was condemned, and on May 9, 1905, the release for the right of way was procured across the lands of relators Marshall Wallace, Louis L. Wallace and Charlotte Davis; that June 17, 1905, according to the statute,

the commissioners made a classified roll of all lands in said district, and that thereafter, on July 10, 1905, pursuant to statutory notice, a meeting was held in said drainage district to hear objections to such classification, and that all of the relators were present, in person or by attorney; that all objections were then withdrawn and all of said relators expressed themselves as being in favor of carrying out said improvement and publicly announced that they had no objections to the classification and ratified and approved the action of the commissioners; that thereafter an assessment of lands of said district was made by plaintiffs in error; that all of said assessments have been voluntarily paid except by the relators, and that relators Charlotte Davis and Fred T. Davis have voluntarily paid a portion of their assessments and Edward J. Brady the whole of his; that long prior to the commencement of this suit the respondents had duly advertised for bids for digging and constructing the ditch and had publicly let a contract for the work at about $27,000; that the contractor had given his bond and expended in and about his work about $10,000 prior to the commencement of this proceeding; that the plaintiffs in error had paid said contractor, prior to this suit, over $3000, and that prior to November 28, 1906, (when all of the relators in this suit except Kidd were added to the petition,) five and one-eighth miles of the seven and one-half miles of said ditch had been completed and that the contractor had been paid on his contract upwards of $14,639, leaving a balance due him of several thousand dollars; that all the lands in the district have been benefited to the extent of $30 an acre by said drain; that the State's attorney of LaSalle county has only taken a nominal part in these proceedings, the same being instituted at the sole request of the relators, and being prosecuted by them at their own expense and for their individual benefit in attempting to escape their just proportion of the cost of the improvement.

In view of the conclusions we have reached in this case we shall not find it necessary to discuss the various points raised on the pleadings in this case. The existence of the district is disputed because the meetings of the highway commissioners held on January 11 and 25, 1905, to organize the district were not held within the limits of the district. The title of the drainage commissioners is disputed on the ground that they were chosen under the provisions of section 15*a* of the Farm Drainage act, which had been repealed. Conceding, for the purposes of this case, that these questions are raised by the pleadings, we are disposed to hold that the relators are estopped by their own acts from raising them. We think it is apparent from this record that the relators did not rely on either of these points until after they had filed their additional counts, in June, 1906. We think it is also apparent from the pleadings that these proceedings have been carried on largely in the interest of private parties and that the interest of the public is little more than theoretical. Manifestly, from the facts set out in the pleas the only relator who was such at the time the original petition was filed (William H. Kidd) was a candidate for drainage commissioner at the first election for those officials in March, 1905. While the pleadings are not entirely satisfactory in form on that question, we conclude from them that all the relators took part in this election. The same conclusion must also be reached with reference to the relators attending the meetings held in July and stating that they were satisfied with all the proceedings up to that point. Obviously, all of the relators were acquainted with the entire proceedings that had been taken and raised no objection of any kind up to that time, and none of them objected until the contract had been let for the entire work and (except Kidd) until a substantial part of it was completed and large sums of money paid thereon and obligations assumed for the remaining portion. The relators knew as well as did plaintiffs in error that the

meetings in January, 1905, were held outside of the dis-
trict.   We are compelled to conclude from the pleadings
that that question was not raised until the work was prac-
tically completed, and then there was a difference of opin-
ion as to whether such meetings were required to be held
in the district, until this court decided the point in *People*
v. *Carr*, 231 Ill. 502.   At most, this objection does not in
any way affect the substantial merits of the case.   Sound
public policy forbids that those who have participated in
such meetings should thereafter be permitted to question
the legality of the organization of a district of this kind.
*People* v. *Waite*, 70 Ill. 25; *People* v. *Moore*, 73 id. 132.

It is, however, insisted that under the decisions of this
court in *Patton* v. *People*, 229 Ill. 512, and *People* v. *Mor-
rell*, 234 id. 47, said section 15*a*, under which the election
of drainage commissioners was held, was not in force at
the time of this first election, and that the relators could
not be estopped by participating in an illegal election.   It
was held in *People* v. *Maynard*, 15 Mich. 463, that the rec-
ognition, by parties interested, of a municipal corporation
organized under an act of doubtful constitutionality would
not permit such parties to inquire, long after, into the regu-
larity of such organization.   (See, also, *State* v. *Village
of Harris*, 13 L. R. A. (N. S.) [Minn.] 533, and note;
*Bannock County* v. *Ball*, 101 Am. St. Rep. [Idaho] 140,
and note.)   Regardless of whether there was any law for
such an election, the recognition by all the parties of the
legality of the district was plainly shown by their taking
part in its organization and subsequent proceedings.   In this
connection it may be noted that section 15*a* was re-enacted
as an emergency law on February 27, 1907, (Laws of 1907,
p. 273,) and that thereafter the present drainage commis-
sioners have all been elected under said law.

Counsel for defendants in error have urged, apparently
for the first time in their briefs in this case, that the organi-
zation of the district was void (*People* v. *Highway Comrs.*

240 Ill. 399,) because one of the highway commissioners signed the petition for the organization of the district and also made an affidavit that the petition contained the required number of signers, and thereafter found that the affidavit was made by a credible witness. Without passing on the point whether this would be a valid objection if raised in apt time, clearly, under the authorities, the relators cannot raise it at this late hour. The reasoning in *Drainage District* v. *Smith,* 233 Ill. 417, *Vandalia Drainage District* v. *Hutchins,* 234 id. 31, and cases cited, is in point here.

Many relations, both public and private, are so involved in a proceeding of this nature that each case must be largely decided on its own special and particular facts. Not every departure from the law in the organization and conduct of the proceedings of the district or the use of its franchises will justify such an order as was entered by the trial court in this case. While the public authorities will not be barred, either by *laches* or the acquiescence of individuals, where it does not appear that the information is filed exclusively for the benefit of private interests, still this court has frequently held that unreasonable delay or acquiescence on the part of the persons complaining, as well as considerations of public interest or convenience, will justify the refusal of the court to proceed to judgment, although no statute of limitations has intervened. (*People* v. *Lease,* 248 Ill. 187; *People* v. *Schnepp,* 179 id. 305; *People* v. *Hanker,* 197 id. 409; *People* v. *Anderson,* 239 id. 266; *People* v. *Hepler,* 240 id. 196.) The rule in *quo warranto* proceedings is the same as it is in *certiorari.* The remedy in either case is not a matter of absolute right. (*People* v. *Schnepp, supra; People* v. *Hanker, supra.*) In a *certiorari* case, wherein the facts as to *laches* or estoppel were no stronger than here, the court held that it would be an abuse of its sound legal discretion and of great public detriment to quash the proceedings, as the errors, at the most, were

technical and harmless and were not shown to be such as would cause substantial injustice to anyone. (*Deslauries v. Soucic,* 222 Ill. 522.) Such is the situation here. After the participation of all the relators in the preliminary organization assessments were levied, liabilities incurred and contracts to large amounts were entered into before any steps were taken to inquire into the legality of the organization of this district. If the facts are as set out in these pleas the acquiescence of the relators in the proceedings bars them from raising the questions of which they now complain. On this record the public interest and convenience also compel the conclusion that the trial judge should have overruled the demurrer to the pleas.

The judgment of the circuit court will therefore be reversed and the cause remanded to that court for further proceedings in harmony with the views herein expressed.

*Reversed and remanded.*