THE PEOPLE *ex rel.* W. C. Petty *et al.* Plaintiffs in Error,
*vs.* JOHN D. THOMAS *et al.* Defendants in Error.

*Opinion filed October 24, 1935.*

CHARLES E. MASON, State's Attorney, RUNYARD & BE-
HANNA, and EDWARDS, BLOCK & BAIRSTOW, (WILLIAM R.
BEHANNA, and J. E. BAIRSTOW, of counsel,) for plaintiffs
in error.

GERALD C. SNYDER, (LEWIS D. CLARKE, and L. ERIC
CAREY, of counsel,) for defendants in error.

Mr. JUSTICE WILSON delivered the opinion of the court:

The State's attorney of Lake county, on the relation of W. C. Petty, county superintendent of schools, made his motion, supported by affidavit, in the circuit court of the same county, for leave to file an information in the nature of a *quo warranto* to require John D. Thomas, Margaret S. Purcell, L. Eric Carey, Homer G. Ingram and Bernadine Knight to show by what warrant they hold the offices of members of the board of education of the township high school district in township 46 north, range 12, east of the third principal meridian, in Lake county. The permission sought was granted and the information was filed. The respondents filed a plea to the information. A general demurrer was interposed to the plea and the demurrer was overruled. The relator elected to abide by his demurrer and judgment was rendered that the information be dismissed without costs. The relator and Myrtle Populorum, not a party to the original cause, prosecute this writ of error for a review of the record.

By the information the charge is made that the respondents unlawfully usurp the offices of the members of the board of education of the township high school district in township 46. It is averred in the plea of justification that on March 1, 1913, a petition signed by ninety-five legal voters of township 46 was filed with the township treasurer requesting him to call an election for the purpose of voting on the proposition of establishing a township high school; that conformably to the statute the treasurer prepared a notice of election and posted eleven copies in the township; that the notice specified the date of the election and the time and the places at which it would be conducted; that pursuant thereto an election was held on April 1, 1913; that a canvass of the returns of the election showed that a majority of the votes cast on the proposition was in favor of the establishment of the proposed high school, and that the board of trustees of schools of

township 46 declared the proposition carried. The plea further avers that at the annual election for the trustees of schools the personnel changed and a new township treasurer was appointed; that no further action was taken in carrying out the will of the voters in township 46 in organizing the new school district until May 3, 1934, when the board of trustees adopted a resolution which declared the need of electing a board of education for the township high school district had become apparent; that in particular the resolution authorized and instructed the treasurer of the board of trustees of township 46 to call an election on May 19, 1934, for the purpose of electing members of the board of education; that pursuant to this resolution the township treasurer gave notice of an election on Saturday, May 19, 1934, for the purpose of electing five members of the board of education for the township high school district formed as the result of the election on April 1, 1913, and that at this election the respondents were elected as members of the township high school board of education, receiving a majority of all votes cast at the election, the votes for the individual respondents being: Thomas 1593, Purcell 1499, Carey 1500, Ingram 1532, and Knight 1402. The concluding averments of the plea are that on May 29, 1934, the respondents met and organized, drawing lots to determine their respective tenures and electing a president and a secretary of the board of education; that they entered upon the duties of their respective offices and are now the duly elected, qualified and acting officers, and that each of them possesses the requisite qualifications as a member of the board of education of a township high school district. This proceeding was instituted on June 21, 1934.

The questions raised by the demurrer to the plea are, whether an election of members of the board of education within sixty days following the affirmative popular vote on the proposition of establishing a township high school

in township 46 was a prerequisite to the corporate existence of the township high school district, and, in the alternative, whether the non-user of the district for a period of twenty-one years effected its dissolution, thereby invalidating the election of the respondents. To determine these questions a review of the pertinent provisions of the applicable statute becomes necessary.

Section 85 of "An act to establish and maintain a system of free schools," approved and in force June 12, 1909, as amended in 1911 and in effect at the time of the referendum, in 1913, provided that upon the receipt of a petition signed by at least fifty legal voters of any school township, it should be the duty of the treasurer to give notice of an election to be held at the next regular election of trustees for the purpose of voting on the proposition of establishing a township high school. (Laws of 1911, p. 508.) The provisions of this section were the same as those in the present statute (Cahill's Stat. 1933, p. 2499; Smith's Stat. 1933, p. 2616;) and prescribed in detail the requirements for posting notice of the election and the form of such notice. A form of ballot was also included. The section further provided that the trustees of schools should conduct the election and canvass and declare the result. In 1913 the next section, so far as pertinent to this inquiry, provided that if a majority of the votes cast should be in favor of establishing a township high school, it should be the duty of the treasurer to call a special election on any Saturday within sixty days for the purpose of electing a township high school board of education, to consist of five members. These members, it was provided, should determine by lot, at their first meeting, the length of term each should serve, the tenure varying from one to three years. Thereafter their successors would be elected for terms of three years. Within ten days after their election, section 86 further provided, the members of the township high school board of education should meet and or-

ganize by electing one of their number president and by electing a secretary. The board was empowered to establish a high school for the education of the more advanced pupils. Section 86 has been amended since 1911, and it now provides that the treasurer shall call a special election within thirty days. (Cahill's Stat. 1933, p. 2499; Smith's Stat. 1933, p. 2616.) Section 91 declares, among other things, that for the purpose of building one or more high schools, conducting and supporting such schools and paying their necessary expenses, the territory for the benefit of which a high school is established under any of the provisions of the statute shall be regarded as a school district, and "the board of education of each of said high school districts shall in all respects have the powers and discharge the duties of boards of education elected under the general School law in common school districts having a population of one thousand or more and not exceeding one hundred thousand inhabitants." The ninety-second section prescribes the procedure for discontinuing certain school districts. It provides that when the inhabitants of any township high school district desire to have the district discontinued, the county superintendent of schools, upon receipt of a petition signed by one hundred legal voters of the district, shall forthwith order an election for the purpose of voting on the proposition of discontinuing the high school named in the petition. A two-thirds majority of the votes cast at the election is necessary to effect the discontinuance of the township high school district.

School districts are quasi-municipal corporations. (*Fiedler* v. *Eckfeldt,* 335 Ill. 11; *Melin* v. *Community Consolidated School District No. 76,* 312 id. 376.) A legally constituted school district is composed of the territory included within its corporate boundaries. The board of education of the particular district, being an agency of the State and not a subdivision thereof, is a separate and distinct corporation, which furnishes the method and machinery for

the government and management of the district. (*Mc-Curdy* v. *Board of Education,* 359 Ill. 188; *Kinnare* v. *City of Chicago,* 171 id. 332.) The fact that the election for members of the board of education may not be held in the manner and within the time prescribed by law does not nullify the formation or affect the legal existence of a township high school district. (*People* v. *Crossley,* 261 Ill. 78; *School Directors* v. *School Directors,* 135 id. 464.) Section 85 provides for the creation of township high school districts, and the succeeding section contains the provision that a board of education shall be elected, within a designated period, to administer the affairs of the district. Although the creation of the district pursuant to the provisions of section 85 is prerequisite to the election of a board of education, it is manifest that the failure to elect the board of education will not defeat the existence of the high school district already created. It necessarily follows that a township high school district was created as the direct result of the election regularly held on April 1, 1913, pursuant to the mandate of section 85.

The relator argues, however, that a mandatory duty rested upon the township treasurer to call a special election for members of the board of education within sixty days after April 1, 1913, and that his failure to comply with the statute precluded the formation of the township high school district. The respondents answer that the dereliction of the treasurer cannot affect the corporate existence of the district, as the time for holding the election is a directory requirement. Whether a statutory provision with respect to an election is mandatory or directory depends upon the legislative intent. Section 86, as it obtained in 1913, provided that within sixty days after a favorable popular vote upon the proposition of establishing a high school an election should be called for the purpose of electing a board of education for the township high school district. The provision in controversy falls within

the familiar rule that where the statute merely provides that certain acts shall be performed within a designated time but does not declare their performance essential to the validity of an election, the law will be deemed mandatory if it does and directory if it does not affect the actual merits of the election. (*People* v. *Miller*, 314 Ill. 474; *People* v. *Graham*, 267 id. 426; *People* v. *Green*, 265 id. 39; *People* v. *Crossley*, *supra*.) It will be observed that section 86 directs the township treasurer to call the election within sixty days but does not fix a definite day on which the first election of members of the board shall be held. His duty to call the election is mandatory in the sense that it cannot be called by any other officer. The holding of the election within the specified period, on the other hand, is a directory provision. (*People* v. *Crossley*, *supra*.) Manifestly, mere delay by the township treasurer in discharging the duty required by law cannot nullify the expressed will of the majority of the voters that a high school be established for the benefit of the new district.

The relator further contends that the non-user of the district for a period of twenty-one years effected its dissolution. A municipal corporation may become inert or dormant or its functions may be suspended for want of officers, but it will not be dissolved by reason of any default or abuse of the powers conferred, either on the part of the officers or inhabitants of the incorporated territory. As municipal corporations exist only by legislative sanction, they cannot be dissolved or cease to exist except by legislative consent or pursuant to legislative provision. (1 Dillon on Mun. Corp. (5th ed.) sec. 333; *People* v. *Niebruegge*, 244 Ill. 82.) Nor is a public corporation dissolved by failure to elect officers. (*People* v. *Niebruegge*, *supra*; *School Directors* v. *School Directors*, *supra*; *People* v. *Town of Fairbury*, 51 Ill. 149; *People* v. *Wren*, 4 Scam. 269.) Furthermore, in the event the electors of the particular township high school district desired to dis-

continue the corporation a method for the accomplishment of that purpose was available. Section 92 specifically provides the manner of instituting and conducting a referendum to that end. Obviously, when the General Assembly prescribed the method of discontinuing the district, the township treasurer was without authority to reach the same result by the expedient of neglecting to perform his statutory duty.

The relator also maintains that the inhabitants of township 46 are precluded from asserting the corporate existence of the township high school district. To sustain this contention the doctrines of estoppel and *laches* are invoked. Where strictly public rights are involved the courts do not interpose to hold the municipality estopped except under special circumstances which would make it highly inequitable or oppressive to enforce such public rights. (*Melin v. Community Consolidated School District No. 76, supra; Phillips v. Leininger,* 280 Ill. 132.) The doctrine of estoppel may be invoked against a municipal corporation where there have been positive acts by the municipal officers which may have induced the action of a party and where it would be inequitable to permit the corporation to stultify itself by retracting what its officers had done, but mere nonaction is not sufficient to work an estoppel. (*Trustees of Schools v. Village of Cahokia,* 357 Ill. 538; *Melin v. Community Consolidated School District No. 76, supra; Logan County v. City of Lincoln,* 81 Ill. 156.) In applying this doctrine the courts will not decide the question by the mere lapse of time but by all the circumstances of the case, and hold the public estopped or not, as right and justice may require. (*Trustees of Schools v. Village of Cahokia, supra; Martel v. City of East St. Louis,* 94 Ill. 67; *Chicago, Rock Island and Pacific Railroad Co. v. City of Joliet,* 79 id. 25.) The record in this case wholly fails to disclose that any inequitable or oppressive result would be occasioned by the operation of the school district.

Nor can the doctrine of *laches* avail the relator. *Laches* consists of such neglect or omission to assert a right as, taken in conjunction with lapse of time more or less great, and other circumstances causing prejudice to the adverse party, operates as a bar. *Carroll* v. *Houston,* 341 Ill. 531; *Forest Preserve District* v. *Emerson,* 341 id. 442; *Morse* v. *Seibold,* 147 id. 318.

The final contention of the relator is that the plea does not set up facts showing a *de jure* title to the offices in controversy. In particular, it is urged that the township treasurer's action in calling the election of 1934 was predicated on a resolution of the school trustees and not on the vote taken on April 1, 1913. Every reasonable presumption will be indulged in favor of the validity of a school district established by authority of the legislative department. (*People* v. *Standley,* 313 Ill. 46.) The rule in *certiorari* under like circumstances obtains in *quo warranto* proceedings. The remedy in either case is not a matter of absolute right. (*People* v. *Crowley,* 250 Ill. 282; *People* v. *Schnepp,* 179 id. 305.) Specifically, the writ of *quo warranto* lies in the sound discretion of the court. (*People* v. *Miller,* 331 Ill. 395; *People* v. *Schnepp, supra.*) In *People* v. *Miller, supra,* a case presented on the pleadings, this court said: "The writ of *quo warranto* is not a writ of right but lies in the sound discretion of the court, which may consider all the circumstances and conditions, the motives of the relators in having the proceedings instituted, and whether the public interest will be served or damaged by the writ and the necessity for and policy of allowing the remedy." The motivating force that impelled the township treasurer to call the election in question is of little importance. The fact remains that he did call the election and that in the statutory notice no mention of the resolution of the school trustees occurs.

Myrtle Populorum, who joined in the prosecution of this writ of error, was not a party to the *quo warranto* pro-

ceeding, a privy to the record or a person competent to release errors. She asserts, however, that as a tax-payer she has been injured by the judgment rendered, will be benefited by its reversal, and, in consequence, is entitled to join in the prosecution of this writ of error. To obtain a reversal she makes the same contentions as those made by the relator. In view of our conclusion it becomes unnecessary to consider the question of whether she was entitled to prosecute a writ of error.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*