(No. 24994.—

THE PEOPLE, by Edward J. Barrett, Auditor, Appellant, *vs.* RALPH F. BRADFORD *et al.* Appellees.

*Opinion filed June 15, 1939—Rehearing denied October 4, 1939.*

64

STONE and SHAW, JJ., dissenting.

JOHN E. CASSIDY, Attorney General, (JOSEPH A. LON-DRIGAN, and P. C. OTWELL, of counsel,) for appellant.

HAL M. STONE, ADSIT, THOMPSON & HERR, and DENT, WEICHELT & HAMPTON, for appellees.

Mr. JUSTICE JONES delivered the opinion of the court:

The People, by Edward J. Barrett, Auditor of Public Accounts of the State of Illinois, filed a complaint in the circuit court of Livingston county against Ralph F. Bradford, former Director of the Department of Conservation, and the National Surety Company, surety on his bond in the sum of $10,000, alleging that, as such director, Bradford had, on January 23, 1933, collected fines, fees, and penalties in the sum of $37,654.81, which he has not paid into the State Treasury, though it was his duty to do so within thirty days after receipt of same. The defendants answered, denying the principal allegations of the complaint, and setting up twelve special defenses. Plaintiff filed a motion to strike these defenses, and the motion was sustained except as to four of the defenses. Plaintiff elected to stand by its motion to strike and judgment was entered for defendants. This appeal followed.

The People have filed a motion to strike the statement, brief and argument of appellees for the reason that they have argued the defenses stricken by the trial court, and urge that these cannot be considered, on review, because appellees took no cross-appeal. They did assign cross-errors. Appellees have moved to strike this motion because a copy of appellant's motion and suggestions in support thereof were not served on opposing counsel at least twenty-four hours before the motion was presented for filing, as required by rule 49 of this court. Both occurred December 13, so the motion of appellees to strike the motion of appellant is sustained.

Moreover, it was unnecessary for appellees to cross-appeal in order to save for review all the defenses interposed in their answer. The judgment appealed from was for appellees, and no part of it was adverse to them. They were, therefore, in no position to prosecute a cross-appeal. Having obtained all the relief they deemed themselves entitled to, they may sustain the judgment upon any ground

warranted by the record, though they may wish to show the court below erred in not giving it to them on different or additional grounds. (*Bullman* v. *Cooper*, 362 Ill. 469; McCaskill, Civil Practice Act Ann. 1936, (Supp.) p. 209.) All of the defenses interposed related to the defense of estoppel, the ground on which the decision of the trial court was based. The refusal of the circuit judge to consider certain elements claimed to create an estoppel does not preclude us from considering them. We shall later discuss the acts which appellees urge create an estoppel against the State.

Bradford, as Director of the Department of Conservation, received from county, city and village clerks the proceeds of fees, fines and penalties collected by them pursuant to the Fish and Game Codes. He had a deposit account with the Livingston County National Bank at Pontiac, in the name of "Ralph F. Bradford, Director of the Department of Conservation." When this bank closed January 23, 1933, there was a balance of $37,654.81 in the account. The State brought suit against the receiver of the bank to establish a preferred claim on the theory of a trust *ex maleficio*. A consent decree was entered allowing a preferred claim of $3000, which was all that could be traced, and the remainder as a general claim, on which dividends in the sum of $12,129.18 have been paid. This total of $15,129.18 was held by the trial court to be a good defense of part payment.

The rule is well established in this State that a public officer is liable on his bond for the loss of public funds coming into his hands by virtue of his office and deposited by him in a bank and lost through its failure, though the bank was reputed solvent, and nothing can relieve him of his obligation to safely keep and pay over such funds, but the act of God or of the public enemy. (*People* v. *West Englewood Bank*, 353 Ill. 451; *Estate of Ramsay* v. *People*, 197 id. 572; *People* v. *McGrath*, 279 id. 550; *Oeltjen*

v. *People,* 160 id. 409; *Thompson* v. *Board of Trustees,* 30 id. 99.) This is true even though the officer rightfully deposited the funds. *A fortiori,* the rule applies if, as contended by the People here, the deposit was wrongfully made.

The statute then in effect, (Smith-Hurd Stat. 1931, chap. 120, sec. 154, par. 142,) provided: "The revenue for State purposes shall be collected in gold and silver coin, United States legal tender notes, current national bank notes and auditor's warrants and in no other currency." The statute also provided, (Smith-Hurd Stat. 1931, chap. 127, sec. 2, par. 171,) that every officer, department, etc., receiving money for or on behalf of the State "shall pay into the State Treasury the gross amount of money so received without delay and not later in any event than thirty days after the receipt of same, without any deduction on account of salaries, fees, costs, charges, expenses or claims of any description whatever." Nowhere is any authority given the Director of the Department of Conservation to accept checks or drafts or to deposit them in a bank for collection. The State Treasurer may deposit State moneys only in banks approved as State depositaries, and then only when the bank shall have deposited securities with the State Treasurer equal in market value to the amount of moneys deposited. (Ill. Rev. Stat. 1937, chap. 130, par. 29.) Bradford's duty was to collect the money from the county, city and village clerks and turn it over to the State Treasurer. It was no part of his duty to select a depositary for such funds. *Town of Cicero* v. *Hall,* 240 Ill. 160.

Appellees contend that section 31 of the Fish Code (Smith-Hurd Stat. 1931, chap. 56) and section 40 of the Game Code (Smith-Hurd Stat. 1931, chap. 61) impliedly authorized Bradford to accept checks and drafts, and, of necessity, to deposit them for collection, by providing that "county, city and village clerks shall not be permitted to make deductions from remittances sent to the department for either postage or for the costs or fees for drafts or

money orders." These negative provisions cannot be held to have repealed, by implication, the express provision of the Revenue act as to the manner in which revenue for State purposes shall be collected.

Appellees insist that the rule of absolute liability does not apply here for the reason that the State is estopped, by the acts of its officers, from asserting its rights against Bradford. The general rule in this State is that the doctrine of estoppel is not applicable to the State acting in its sovereign capacity. In *People* v. *Brown,* 67 Ill. 435, the People brought suit against the sureties on a sheriff's bond. Defendants claimed an estoppel, on the ground that because of a mistake of the Auditor in stating the sheriff's account, defendants were prevented from obtaining indemnity against the State. We held the defense of estoppel not available against the State and said: "Its rights, revenues, and property would be at a fearful hazard should this doctrine be applicable to a State. A great and over-shadowing public policy of preserving these rights, revenues and property from injury and loss by the negligence of public officers, forbids the application of the doctrine. If it can be applied in this case, where a comparatively small amount is involved, it must be applied where millions are involved, thus threatening the very existence of the government."

In *People* v. *Woods,* 354 Ill. 224, the defendant taxpayer had given the county collector two checks in payment of his taxes, but because of the collector's negligence they were not presented to the drawee bank until it had failed. We held the State was not estopped and said: "The general rule is that the neglect or omission of public officers cannot work an estoppel against the State (10 R. C. L. 705) and we can see no reason for departure from that general rule in this case." In *People* v. *Illinois Women's Athletic Club,* 360 Ill. 577, we said that "public policy forbids the application of the doctrine of estoppel to a sovereign State where the public revenues are involved." We have never

held the State estopped, and have never held a municipal corporation estopped in a case involving its revenues.

Appellees cite *State* v. *Illinois Central Railroad Co.* 246 Ill. 188, at pages 234, 235. There it was contended the State was estopped from inquiring into the correctness of the railroad's semi-annual statements. We held the State was attempting to collect revenue acting in its governmental capacity and that public policy requires that the State shall not lose through the *laches* or negligence of its officers. We then said: "While cases may arise of such a character that right and justice will require that equitable estoppel may be asserted even against the State when acting in its governmental capacity * * * no such showing is made here in the bill as will bring this case within that class." Appellees argue that this is such an exceptional case. They point out that, here, not only were there acts of negligence and omission but also positive acts on the part of State officers, and that equity and justice demand a departure from the general rule.

We shall consider the acts relied upon as creating an estoppel. The first one is that prior to Bradford's opening his account in the Livingston County National Bank, the State Treasurer had refused to accept checks and drafts presented by him. In this the State Treasurer was only complying with the statute regarding the collection of State revenue. *People* v. *West Englewood Bank, supra.*

Next, Bradford says that on April 1, 1930, he was directed by the State Treasurer, Auditor of Public Accounts, and the Director of the Department of Finance to deposit for collection, in the Livingston County National Bank, the checks and drafts received by him. The rights and duties of the Director of the Department of Conservation are prescribed by statute. He is not under the direction or supervision of these officers, and it is no defense in an action by the State that they told him to do something he had no right to do.

He then says that January 19, 1933, Governor Horner directed him to procure a cashier's check for the amount of his deposit, which he did, and on January 20, in the company of Governor Horner, presented it to the State Treasurer. This action by the Governor was merely an attempt to get Bradford to perform his duty and pay the money into the State Treasury, and in no way tends to create an estoppel. Nor is the fact that the State Treasurer did not present the check for payment by the drawee bank until January 23, 1933, on which day the bank closed, important in this case. *People* v. *Woods, supra.*

The ground most strongly relied on by appellees as working an estoppel is the institution and prosecution of the suit, by the Auditor of Public Accounts and the Attorney General, against the receiver of the Livingston County National Bank without notice to Bradford and without making him a party. We do not see how this can be regarded as creating an estoppel against the State. This money belonged to the State and Bradford was merely the agent, who was primarily liable to the State. He could have been sued and held liable for the entire amount. By bringing the suit against the receiver and establishing a preferred claim to the extent the funds could be traced and a general claim for the balance, Bradford's liability was reduced to that extent. It is not claimed that Bradford was a necessary party to that suit. The Auditor and the Attorney General were the proper parties to represent the State. Bradford claims that by diligence the State could have established a preferred claim for the entire deposit. We cannot go into that, for it would involve a relitigation of the suit against the receiver.

From a consideration of all the facts we conclude that this is not such a case as requires an exception to the general rule that the State, acting in its governmental capacity, cannot be estopped by the acts and conduct of its officers.

The judgment is reversed and the cause is remanded, with directions to sustain appellant's motion to strike appellees' answers, except as to the defense of part payment.

*Reversed and remanded, with directions.*

Mr. JUSTICE STONE, dissenting:

The judgment in this case was entered by the circuit court on a motion to strike the answer of Bradford as defendant. On an analysis of the various averments or counts of the answer, the following facts, well pleaded, which are to be taken as confessed by the motion to strike, appear. They are the facts of this case, so far as this court is concerned, and are that defendant received checks and drafts in payment of fees, fines and penalties, which the State Treasurer refused to accept as they were not money, but, together with the Auditor and Director of the Department of Finance, directed defendant to deposit them in the bank, later known as the National Bank of Pontiac. On January 13, 1933, the Governor directed defendant to procure a cashier's check from that bank of the amount of the deposit, which he did, and went with the Governor to the State Treasurer's office where he endorsed and delivered the check to the State Treasurer with the approval and consent of the Auditor. This check was made to defendant as Director of Conservation and not personally. Though the check was delivered to the State Treasurer on January 19, he did not present it until January 23, on which day the bank closed.

Later, the Auditor of Public Accounts brought a suit in equity against the receiver of the National Bank of Pontiac claiming the deposit as trust funds belonging to the State. Defendant had no notice of this suit, was not made a party, and did not know of such a suit until sued in this case. The Auditor, by the Attorney General, without notice to defendant, compromised the State's claim by

accepting a preference of $3000 and an allowance of the remainder as a general claim upon which some $12,000 was later paid to the State.

The first question arising then is whether these facts estop the State from now claiming this money from defendant. The answer alleges that had the defendant been made a party to the proceeding against the receiver, or received notice of the same, he could and would have shown that the funds were State funds and that the State was entitled to a priority to them and thereby the State would have collected in full. The National Bank of Pontiac was a State depository and the account was in the name of defendant as Director of the Department of Conservation and not personally. There is no claim, and can be none under the statement of the facts in this case, that defendant at any time ever had any of these funds in his possession, nor is it argued that he could collect these fines and fees, which were paid usually through county and city clerks, except by check or draft. The nature of the transaction made it impossible to collect them in gold coin or currency. It would have prevented the operation of the functions of the department to have required such a course of action, and, very sensibly, the Auditor, Director of Finance and State Treasurer, directed defendant to open this account as herein stated.

It is first argued that there can be no estoppel against the State; that this is State money and that defendant, being insurer of the funds, is required to pay at all events no matter what has been done or by whom. With this proposition, I cannot agree. It has been generally held that cases may arise in equity of such a character that right and justice require that equitable estoppel be asserted even against the State when acting in its governmental capacity. That has been so said by this court in *State of Illinois* v. *Illinois Central Railroad Co.* 246 Ill. 188; *County of Piatt* v. *Goodell,* 97 id. 84; *County of Logan* v. *City of Lincoln,* 81 id. 156. That it is also the general rule is evidenced by

Bigelow on Estoppel, fourth edition, page 331, and in a comprehensive note to the opinion in *State of Michigan* v. *Jackson L. & S. R. Co.* 16 C. C. A. 353. These authorities lay down the rule that the State, like any private person, may, in a proper case, be estopped with the only necessary difference arising from the different manner in which its determinations are manifested and its actions performed. As was said in *State* v. *Milk,* 11 Fed. 389, "Resolute good faith should characterize the conduct of States in their dealings with individuals and there is no reason in morals or law that will exempt them from the doctrine of estoppel."

Estoppel is exercised against the State usually on the ground of the acts or omissions of public officers. In the absence of fraud or collusion, the acts of public officers acting on behalf of the State, within the limits of the authority conferred upon them and in performance of their duties in dealing with third persons, are the acts of the State and cannot be repudiated by it. This is the basis of the operation of estoppel against the State. (*People* v. *Stephens,* 71 N. Y. 527; *Linsay* v. *Hawes,* 2 Black (U. S.) 554; *St. Paul, Stillwater and Taylor's Falls Railroad Co.* v. *First Division, etc., Railroad Co.* 26 Minn. 31.) While the rule is that the State may not be estopped through the negligence of its officers or their acts beyond the scope of their authority as agents of the State, (*Dement* v. *Rokker,* 126 Ill. 174,) yet where a constitutional officer with power to bind the State does so by a position taken, to the detriment of a citizen, the State is estopped to take a different position, as in a case where a contract was made by a duly authorized officer, which was pronounced by the Attorney General to be invalid, the State is estopped later on from claiming any benefit· from that contract or to deny its unlawfulness. This is on the ground that the opinion of the Attorney General was binding on the State. *Peck* v. *Burr,* 10 N. Y. 294.

The doctrine of estoppel may be invoked against a municipal corporation or the State, where there have been positive acts by its officers which may have induced action of

an individual, and where it would be inequitable to permit the governing agency to stultify itself by retracting what its officers had done. In all such cases, the courts will determine the right and justice of the matter and will declare the public estopped or not in accord with such considerations. *People* v. *Thomas,* 361 Ill. 448; *Trustees of Schools* v. *Village of Cahokia,* 357 id. 538; *Melin* v. *Community Consolidated School District,* 312 id. 376; *Martel* v. *City of East St. Louis,* 94 id. 67.

The rule adopted in the Federal courts, as applied to the government of the United States or the States, concerning the matter of estoppel, and the position which the government occupies before the courts in a suit brought by it, have been well discussed and considered in *Walker* v. *United States,* 139 Fed. 409, *Linsay* v. *Hawes, supra,* the *Sinking Fund cases* in 99 U. S. 719, 25 L. ed. 496, and *United States* v. *Bank of Metropolis,* 15 Pet. 392, 10 L. ed. 774, wherein the rule is adopted that the government, when proceeding in court against the citizen stands upon no better footing than would a private citizen, even though the suit relates to the collection of its revenues. In the *Walker case,* it was said: "It is, however, equally true, when the sovereign becomes an actor in a court of justice, especially in an action which proceeds on equitable principles, that his rights must be determined upon those fixed principles of justice which govern between man and man in like situation, and that the sovereign will be bound, as an individual would be, by his own acts, or, by what is the same thing, the acts of his agents lawfully done within the purview of the authority he commits to them. * * * The underlying principle of all the decisions is that when the sovereign comes into court to assert a pecuniary demand against the citizen the court has authority and is under duty to withhold relief to the sovereign, except upon terms which do justice to the citizen or such as determined by the jurisprudence of the forum in like subject matter between man and man." It

has also been frequently said that when a State becomes a litigant against an individual, it cannot deny its adversary any defense which would belong to him were his opponent another citizen instead of the State itself. *State v. Bucholz,* 169 Minn. 226; *Anderson Clayton and Co. v. State,* 122 Tex. 530; *United States v. Norwegian Barque Thekla,* 266 U. S. 328, 69 L. ed. 313.

The Attorney General is the principal law officer of the State and when he, on behalf of the State Auditor, filed a bill in equity against the receiver of the bank, he had power to and did bind the State with positions taken and presentations made. (*Fergus v. Russel,* 270 Ill. 304; *Saxby v. Sonnemann,* 318 id. 600; *People v. Spring Lake Drainage District,* 253 id. 479; *Spring Lake Drainage District v. Stead,* 263 id. 247; *New York v. New Jersey,* 256 U. S. 296, 65 L. ed. 937.) Under section 15 of chapter 15 of our statutes, the Auditor of Public Accounts is the proper officer to institute suits in which the State is interested. So there is before us the fact that a properly authorized officer, with the Attorney General, also fully authorized, filed suit first against the receiver claiming these funds as State funds, and then compromised that suit, and this without notice to the defendant, by taking over from him any right of claim against the bank and settling it in the name and for the State for $3000 as a preferred claim and the balance of the $37,654.81 as a general claim, thus taking over the account as State funds and depriving defendant of the opportunity to prove, as he in his answer declares he could prove, that the funds were trust funds and all recoverable to the State. If indeed he needed to prove it, it would seem that the cashier's check made to defendant as Director of Conservation for the State, is alone enough to acknowledge this fund as a trust fund for the State and as belonging to the State, and while we have not before us a discussion of the advisability of settling this matter as it was settled with the receiver, the fact remains that the matter was

taken out of the hands of the defendant and by the Attorney
General and Auditor considered State funds, and the claim
settled in that way.

It is clear that this destroyed the right of subrogation
of the defendant against the bank for any claim which the
State may assert and require him to pay. It is a commonly
accepted principle of suretyship that destruction of the right
of the surety to subrogation without his consent discharges
him. (*Foss* v. *City of Chicago,* 34 Ill. 488.) It is an
equitable rule that where a creditor releases or permits to
be lost a security for a debt, other securities are thereby
released to that extent. (*Alexander Lumber Co.* v. *Aetna
Accident Co.* 296 Ill. 500; *State Bank* v. *Bryan,* 268 id.
151; *Holmes* v. *Williams,* 177 id. 386; *Phares* v. *Barbour,*
49 id. 370.) Here, the compromise of the claim of the State
against the receiver, without the consent or knowledge of
the defendant, and treating the claim as only between the
State and the receiver, brought about the operation of this
rule.

It is urged by counsel that $3000 was all that could be
traced. There was not in this case a problem of tracing.
The bank knew the character of the fund, knew that they
were State funds in so far as they came into its hands, and
it could not make any portion of such funds a general debt
against the bank by permitting any other use than for the
fiduciary's trust. (*Massachusetts Bonding Co.* v. *Standard
Trust and Savings Bank,* 334 Ill. 494.) An examination
of the cases cited shows that the rule which once required
the tracing of funds in a case of this character has become
practically obsolete. Under the early cases, if trust funds
became mixed with other property of the same kind so as
not to be distinguishable, the equity therein was lost. But
this view no longer obtains. The rule now generally estab-
lished is that confusion or mixing of money or property
with other money or property of the same kind does not
destroy the equity but converts it into a charge upon the

entire mass thereby giving to the party injured by the unlawful diversion a priority of right over the creditors of the possessor. *Washington Loan and Banking Co.* v. *Fourth Nat. Bank of Macon,* 38 Fed. (2d) 772; *Butler* v. *Western German Bank,* 159 Fed. (CCA) 116; *Monticello Hardware Co.* v. *Weston,* 28 Fed. (2d) 672.

· That the State was entitled to a prior claim against the receiver for the entire fund deposited in that bank by an agent of the State, and recognized by the bank as trust funds, is well settled in this State. (*People* v. *Farmers State Bank,* 335 Ill. 617; *American Legion Post* v. *Barrett,* 371 id. 78.) It is argued that the latter case is not authority for this rule because in that case the money was deposited by the State Treasurer who had a right to deposit it. We are unable to see wherein that affects the application of the rule. If the money was State money, as contended in the suit against the receiver and now contended in this suit against the defendant, it was State money whether it was deposited with or without authority. There is no doubt in this record, either from the statements in it or from the position of the bank itself in the issuance of the cashier's check to the Department of Conservation, that these were State funds. They were funds collected for State uses by an officer authorized to collect them. The Attorney General had authority to go into court and take the position he took. It was within his power, if he chose to do so, to ignore the defendant in the transactions there. But his actions no less bound the State in taking over the claim without giving an opportunity to the defendant, whether he be considered insurer or merely surety, under such facts to attempt to save himself by subrogation or on whatever grounds were available to him.

It is clear to my mind that no individual citizen would be permitted to secure a judgment against a defendant in a case such as this, as set out in the cases which I have here cited. The State here has sued an individual who has

set up equitable defenses, which under our Civil Practice act may be done, and therefore the State must be treated as any other party litigant. By taking over and claiming this account, settling it and receiving money on it as its own, the State, like any individual, must be estopped to say that it is not bound by such acts but can nevertheless sue the insurer or guarantor of such funds.

The judgment of the circuit court was right and should be affirmed.

Mr. JUSTICE SHAW concurs in this dissenting opinion.