(No. 21609.—

JOHN UPHOFF, Appellee, *vs.* THE TRUSTEES OF TUFTS COLLEGE, Appellant.

*Opinion filed December 23, 1932—Rehearing denied Feb. 8, 1933.*

BARNETT & WILSON, (WALTER L. SUMMERS, of counsel,) for appellant.

RICHARD H. RADLEY, JR., for appellee.

Mr. JUSTICE ORR delivered the opinion of the court:

Appellee, John Uphoff, filed his bill in equity in the circuit court of Peoria county on January 26, 1928, to quiet title to certain lands in Peoria county. The appellant, the Trustees of Tufts College, a corporation, was made a party defendant, with others. Answers were filed and the cause was referred to the master in chancery, who found the equities were with the defendants, and recommended a dismissal of the bill of complaint for want of equity. Objections of appellee to the master's report were

overruled and treated as exceptions before the chancellor, who later sustained them and entered a decree granting the relief prayed for in the bill. From this decree the present appeal was taken by the Trustees of Tufts College.

The bill alleged that at the time of its filing, and for many years prior thereto, the complainant was and had been the owner in fee simple and in possession of all of the lands described; that the defendants, among whom was appellant, claimed an interest in certain coal, mineral and mining rights in the premises, some claiming through certain devises, others through certain deeds appearing of record, and others by virtue of descent from certain persons who claimed such rights in the premises; that such persons have no rights in the premises or any part thereof, and that such claims constitute a cloud upon the title of appellee and should be removed.

The claims of the defendants, including appellant, in the coal, mining and mineral rights in the lands described, and the instruments under which they claim, as set up and admitted in the bill of complaint, are as follows: In 1869 William Forbes was the owner in fee of the southeast quarter of the southeast quarter of section 33, township 8 north, range 6 east of the fourth principal meridian, in Peoria county. On October 4 of that year Forbes and his wife executed and delivered their warranty deed, by which they conveyed to Milton Sutliff, Dwight R. Chapman and Moses J. Richards an "undivided one-half of all the coal and other minerals on, within and under" the lands described in the deed, "together with the right to search for, mine and remove the same." This deed was duly recorded. In 1870 George Magee was the owner in fee simple of the east half of the southwest quarter, the southwest quarter of the southwest quarter, and twenty acres off the south end of the east half of the northwest quarter, all in section 34, township 8 north, range 6 east of the fourth principal meridian, situated in Peoria county. On June 10,

1870, Magee executed and delivered a warranty deed, by which he conveyed to Sutliff, Chapman and Richards "an undivided one-half of all the coal and other minerals on, within and under" the land described in the deed, "together with the right to search for, mine and remove the same." This deed was also duly recorded. Subsequently Sutliff, Chapman and Richards and their grantees made conveyances of parts of their interests in the coal, mineral and mining rights covered by the deeds from Forbes and Magee to them. In 1903 Augustus E. Scott through *mesne* conveyances became the owner of an undivided two-thirds interest in an undivided one-half interest of all the coal and minerals lying beneath the above described premises, with the right to mine and remove the same. Scott died testate in 1915, and by his will devised all his interest in such coal, mineral and mining rights underlying the lands above described, to his wife, Cecelia G. Scott, in trust, to hold, invest and re-invest, to use and pay to herself all the income thereof during her life, and at her decease said estate to be given and paid to the trustees of Tufts College.

Appellee derives his title to the lands involved under the following chain of title, as set up in the bill: William Forbes died intestate and at the time of his death was the owner of the southeast quarter of the southeast quarter of section 33, excepting the coal and mineral interests he had theretofore conveyed by his deed to Sutliff, Chapman and Richards in 1869. Thomas Forbes was the only son and heir-at-law of William Forbes. In 1877 Thomas Forbes and wife conveyed said lands by warranty deed to George Wasson, no reservation or exceptions appearing therein. On February 14, 1880, Wasson, unmarried, conveyed the lands to Bernard Uphoff and Mary Uphoff, his wife, by warranty deed, without exception or reservation.

George Magee and wife, after the deed in 1870 to Sutliff, Chapman and Richards for an undivided one-half of the coal and minerals underlying the east half of the south-

west quarter, the southwest quarter of the southwest quarter, and twenty acres off the south end of the east half of the northwest quarter, all in section 34, on January 19, 1875, conveyed these same lands by warranty deed to Bernard Uphoff, but in this deed it was provided that the "grantors should not be liable on their covenants herein on account of having made deed to Milton Sutliff and others, dated June 10, 1870." Uphoff died testate June 20, 1900. By his will the premises last described were given to his wife, Mary Uphoff, for life, and upon her death to John Uphoff, appellee herein, in fee simple.

On December 11, 1872, being after the execution of the above mentioned deed from William Forbes to Sutliff, Chapman and Richards for the undivided one-half interest in the coal, mineral and mining rights, Forbes and wife made and delivered their warranty deed to Isaac Frank for the west half of the southeast quarter of the southeast quarter of section 33, no reservation or exception appearing therein. On December 10, 1883, Frank and wife conveyed these same premises by warranty deed to Henry Grafelman, no reservation or exception appearing therein. Subsequently Grafelman died testate, leaving his real estate to be divided equally among the children of his brothers and sisters. The premises owned by Grafelman at his death were later conveyed to Herman Landwehr by *mesne* conveyance, with no reservations or exceptions. Landwehr died intestate prior to the year 1903, leaving certain children named in the bill as his heirs-at-law, who on March 1, 1903, together with their respective wives and husbands, by warranty deed conveyed the last described premises to the appellee, John Uphoff, no reservation or exception appearing in the deed.

Mary Uphoff, widow of Bernard Uphoff, died testate September 23, 1907, owning an undivided one-half interest in the east half of the southeast quarter of the southeast quarter of section 33, and devised the same to her husband, Bernard, for life and upon his death to John Uphoff, ap-

pellee. Subsequently, by decree of the circuit court of Peoria county construing the wills of Bernard and Mary Uphoff, appellee was decreed to be the owner in fee simple of the east half of the southeast quarter of the southeast quarter of section 33, the northwest quarter of the southwest quarter, the east half of the southwest quarter and the southwest quarter of the southwest quarter, and twenty acres off the south end of the east half of the northwest quarter, all in section 34, township 8 north, range 6 east of the fourth principal meridian, in the county of Peoria. The appellant and other parties defendant to the bill of complaint were not parties to this proceeding.

The appellee sets up in his bill that he, and those through whom he claims, from the dates of the conveyances of the undivided one-half of the coal and minerals to Sutliff, Chapman and Richards, about the year 1870, to the date of the filing of the bill, have been in the open, notorious, exclusive, adverse and continuous possession of the described premises, claiming to own the same, and all right and title therein, in fee simple, and that they have paid all taxes legally levied and assessed against the same during said period.

The Federal Land Bank of St. Louis filed its answer to the bill, setting up a mortgage from John Uphoff and wife dated March 1, 1922, securing the sum of $8000, and in which the west half of the southeast quarter of the southeast quarter of section 33, and other lands, are mortgaged, "excepting, however, coal lands heretofore conveyed." The rights of H. B. Pinkerton, trustee, to a lien against Uphoff's interest in the premises under a certain trust deed, were also admitted.

Thomas Forbes had not farmed the east half of the southeast quarter of the southeast quarter of section 33 when he deeded the land to Wasson, in 1877. After this deed Wasson plowed the land and put part of it into wheat that fall. Wasson stated he claimed to own the twenty acres from the time he got the deed until he deeded it to

Bernard Uphoff about two years later. Wasson opened up a little strip-bank on the twenty acres but did not get out much coal. He stated that he claimed to own the coal and everything in the land. Uphoff was living on the southwest quarter of the southwest quarter of section 34 at that time and farmed all of the east half of that tract. Witness stated he was continuously in possession of the twenty acres after he bought it until he sold it, claiming to own it in fee simple. He never lived on the east half of the southeast quarter of the southeast quarter of section 33, and did not know that Sutliff, Chapman and Richards owned or claimed coal interests under the land or in that vicinity. Appellee mined some coal on the east half of the southeast quarter of the southeast quarter of section 33 ten or twelve years before the hearing, 1928. Some time in the lifetime of Bernard Uphoff, appellee's father, the latter mined a small quantity of coal for a short time. Appellee, his father and his mother farmed this land from the time Bernard bought it down to the time of filing the bill, fenced it and paid taxes according to government description.

Herman Landwehr, Sr., lived on the west half of the southeast quarter of the southeast quarter of section 33. He bought it from the Grafelman heirs in 1893 and lived on it until he died, in 1903. He farmed it and had it all under fence. He operated a strip coal mine on the land for several weeks during one season, selling some coal to the neighbors and using the remainder himself. After his death his heirs farmed it until they deeded it to appellee, who dug some coal there over twenty years ago and continued his general farming operations from 1903 to 1928.

Henry Grafelman bought the northeast quarter of the southeast quarter and the west half of the southeast quarter of the southeast quarter of section 33 from Isaac Frank. He built a house on it and farmed the land for one year and died. His mother farmed it three or fours years after Henry died.

Bernard Uphoff commenced farming the lands acquired by him from the dates of the several conveyances to him. These lands were farmed by him, by his widow or his children down to the time of the filing of the bill. During this time the lands were fenced where not fenced before and the usual farming operations were carried on. Since he acquired his title appellee has continued such farming operations.

Appellee testified that he had been openly and continuously claiming to own all of the premises involved in the suit in fee simple, including the coal and mineral rights, and that he had never known that there were any mineral rights outstanding in these lands prior to the time he had an abstract drawn up for it, about two and one-half years before the date he testified. He offered in evidence tax receipts and the testimony of the deputy county clerk of Peoria county, who testified from the collector's books for the purpose of showing payment of taxes from 1870 down to the year 1923. All of this evidence showed that the taxes were paid according to government description, and that there apparently had been no separate assessment of any mineral interests in the lands. The appellee, as shown by the evidence, continued the payment of taxes by government description from 1923 down to the time of filing the bill. It was also shown that, commencing with the year 1923, the mineral rights were assessed separately, and the taxes that were assessed against the mineral rights were paid by the A. E. Scott estate or by Tufts College. There is no controversy between the parties as to the title of appellee to the surface of the lands described in the bill and an undivided one-half of all the coal and other minerals under such lands. In none of the conveyances or wills under which appellee claims was there any exception made of the undivided one-half interest in the coal and other minerals conveyed to Sutliff, Chapman and Richards, except in

one deed made by George Magee in 1875 to Bernard Up-hoff, father of appellee.

It is contended by appellant that the deeds of Forbes and Magee of coal and other mineral rights under the different tracts of land constituted a severance and that the grantees became owners of a separate estate in an undivided one-half of such coal and minerals, and that appellee, who succeeded to the remaining interest of Forbes and Magee, became owner of the entire surface and a tenant in common with respect to the undivided one-half interest in the mineral rights. The decree found that appellee was fee simple owner of all the property described in the bill, including all of the coal and other minerals underlying the surface, by reason of the bar of sections 1 and 6 of the Statute of Limitations, thus holding that there had been no separation of title to the coal and minerals underlying the lands.

It is our opinion that the title to the coal and minerals was severed by the deeds from Forbes and Magee to Sutliff, Chapman and Richards in 1869 and 1870, respectively. Where such severance has occurred the possession of the surface does not carry with it the possession of the minerals under the surface. Separate estates are created by a severance, which are held by separate and distinct titles, and each estate is incapable of possession by the mere occupancy of the other; and this is so even if the instrument constituting color of title purports to convey the whole property. (*Renfro* v. *Hanon,* 297 Ill. 353; *Catlin Coal Co.* v. *Lloyd,* 180 id. 398; *Kinder* v. *LaSalle County Coal Co.* 301 id. 362, and cases cited.) Where there is a conveyance of a fractional undivided interest in the minerals, or a conveyance of lands excepting a fractional interest in the minerals, a severance of the mineral estate from the surface estate is effected and the grantor and the grantees become tenants in common of the mineral estate, although one of them may still own the surface interest. (*Gill* v. *Fletcher,*

74 Ohio St. 294, 78 N. E. 433; *Preston* v. *White*, 57 W. Va. 278, 50 S. E. 236; *South Penn Oil Co.* v. *Haught*, 71 W. Va. 720, 78 S. E. 759; *Prairie Oil and Gas Co.* v. *Allen*, 2 Fed. (2d) 566; *Hochsprung* v. *Stevenson*, 82 Mont. 222, 266 Pac. 406; *Humble Oil and Refining Co.* v. *Kishi*, 291 S. W. (Texas) 538; *Adams* v. *Elkhart Coal Corp.* 251 S. W. (Ky.) 654.) Deeds purporting to convey the entire title do not operate as adverse possession or notice of an adverse claim where there has been a severance or separation of title of the minerals from the surface prior thereto. (*Catlin Coal Co.* v. *Lloyd, supra; Renfro* v. *Hanon, supra; Gill* v. *Fletcher, supra.*) The evidence in this record shows only an occasional act of coal mining by appellee and those who preceded him in title. Where there has been a severance of title between the surface and the underground minerals, mere occasional acts of mining by the owner of the surface do not constitute adverse possession of the minerals remaining in the ground. 40 Corpus Juris, sec. 446, p. 907; *Vance* v. *Clark*, 252 Fed. (W. Va.) 495; *Hooper* v. *Bankhead*, 171 Ala. 626, 54 So. 549; *Armstrong* v. *Caldwell*, 53 Pa. 284; *Huss* v. *Jacobs*, 210 Pa. 145.

It is further claimed by appellee, under sections 1 and 6 of the Statute of Limitations, that all rights claimed by appellant in the premises have long since been abandoned and lost, and that the assertion of such rights is now barred by his adverse possession and payment of taxes under color of title. But title cannot be acquired under the Limitation act without possession, and there was insufficient proof of adverse possession by appellee of the remaining undivided one-half interest of the mineral rights after the severance of the estates. Where there has been a severance of the mineral estate from the surface estate, non-user or abandonment of the mineral interest does not terminate the estate. (*Gill* v. *Fletcher, supra; Armstrong* v. *Caldwell, supra; Adams* v. *Elkhorn Coal Corp. supra; Crain*

v. *Pure Oil Co.* 25 Fed. (2d) 824; *Bodcaw Lumber Co.* v. *Goode,* 160 Ark. 48, 254 S. W. 345.) Payment of taxes by government description after severance of title to minerals and surface, whether the minerals were or were not separately assessed, does not constitute payment of taxes under section 6 of the Limitation act where adverse possession of the minerals under color of title and payment of taxes is alleged and title claimed under that section. *In re Major,* 134 Ill. 19; *Consolidated Coal Co.* v. *Baker,* 135 id. 545; *Catlin Coal Co.* v. *Lloyd, supra; Sholl Bros.* v. *People,* 194 Ill. 24; *In re Maplewood Coal Co.* 213 id. 283; *Kinder* v. *LaSalle County Coal Co. supra.*

Appellee lays considerable stress upon the holding of this court in *Brand* v. *Consolidated Coal Co.* 219 Ill. 543, where it was held that under the evidence presented a conveyance of the right to mine and remove three-fourths of the coal in a certain vein did not have the effect of severing the mineral estate from the surface estate. But that case must be distinguished from the case now before us because the bill there failed to allege that "three-fourths of the coal, or any part of it, is real estate still in place under the soil, * * * and therefore fails to show that complainant and defendant are tenants in common of the coal."

Much reliance is also placed by appellee upon the case of *Virginia Coal and Iron Co.* v. *Hylton,* 115 Va. 418, but that case must likewise be distinguished, because, as the court there said: "This is not a case where a tenant in common, being or entering into possession as such, afterwards attempts to claim that his possession was adverse to his tenants in common. Hylton did not enter as a tenant in common." Here it is admitted that appellee, and those through whom he claims title, were originally tenants in common in the coal and mineral rights conveyed by Forbes and Magee to Sutliff, Chapman and Richards.

Counsel for appellee further cites the cases of *Waterman Hall* v. *Waterman,* 220 Ill. 569, *Goewey* v. *Urig,* 18

id. 238, *Steele* v. *Steele,* 220 id. 318, *Peabody* v. *Burri,* 255 id. 592, and *Andrews* v. *Floyd,* 308 id. 559, in support of his contention that an entry by the grantee of one tenant in common under a conveyance which purports to convey the whole estate amounts to an ouster of the co-tenants. But in each of these cited cases one tenant in common conveyed the whole estate, followed by open and adverse possession of the grantee. In none of these cases had there been a prior severance of the mineral estate from the entire fee, and the tenancy in common was the only fee asserted. These decisions are therefore not applicable to the facts before us.

It is lastly argued by appellee that Sutliff, Chapman and Richards were mere licensees to mine one-half the coal and minerals found under the land, and that such license has become void through non-user and lapse of time under the Statute of Limitations. No allegation to this effect was contained in appellee's bill of complaint, but, on the contrary, the conveyances to Sutliff, Chapman and Richards are described in the bill as warranty deeds, granting to the grantees, "their heirs and assigns forever," an absolute interest in "all the coal and other minerals on, within and under" the lands described, "together with the right to search for, mine and remove the same." We see, and can find, no basis for holding that these instruments were leases. *Consolidated Coal Co.* v. *Baker, supra.*

For the reasons above given we are of the opinion that the circuit court of Peoria county erred in finding the equities with the complainant, who is the appellee here. The decree of that court is therefore reversed and the cause is remanded, with directions to enter a decree dismissing the complainant's bill for want of equity.

*Reversed and remanded, with directions.*