(No. 31858.

THE PEOPLE *ex rel.* Benjamin Bodecker *et al.,* Appellants, *vs.* COMMUNITY UNIT SCHOOL DISTRICT No. 316 *et al.,* Appellees.

*Opinion filed May 24, 1951—Rehearing denied September 17, 1951.*

PRESTON W. KIMBALL, State's Attorney, and HOMER H. WILLIAMS, both of Carthage, SCHMIEDESKAMP & DEEGE, of Quincy, and BARBER & BARBER, of Springfield, (HENRY E. SCHMIEDESKAMP, and SAMUEL C. FIELDEN, of counsel,) for appellants.

LEON L. LAMET, of Warsaw, and SCOFIELD, BELL & BELL, of Carthage, (CHARLES J. SCOFIELD, and EARL N. BELL, of counsel,) for appellees.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

Community Unit School District No. 316 of Hancock County was established by an election held February 28, 1948. Community Unit School District No. 317, also of Hancock County, was similarly established on March 6, 1948. These districts adjoin each other on two sides. March 12, 1948, a petition was filed with the county superintendent of schools, signed by approximately 1355 persons,

constituting more than two thirds of the voters residing in district No. 317, requesting that the territory comprising district No. 317 be annexed to district No. 316. March 13, 1948, other petitions were filed requesting the annexation of common school districts Nos. 172, 173, 174, 177 and 178, all of Hancock County, to district No. 316. These petitions contained a total of 205 signatures and each was signed by more than two thirds of the voters residing in the particular district seeking annexation. For technical reasons, not important here, new petitions for the annexation of districts Nos. 174 and 178 were filed on March 17, 1948. In the meantime, six persons filed objections to the several petitions for annexation. On March 17, 1948, the county superintendent of schools overruled the objections and entered orders annexing the territory of Community Unit School District No. 317 and common school districts Nos. 172, 173, 174, 177 and 178 to Community Unit School District No. 316. The objectors prosecuted an appeal to the State Superintendent of Public Instruction. While the appeal was pending, the county superintendent of schools, on July 21, 1948, ordered an election to be held in district No. 316, including annexed territory, for the purpose of electing a board of education and, on July 31, 1948, Walter L. Miller and six others were elected members of the board. Thereafter, on August 26, 1948, the State Superintendent of Public Instruction affirmed the challenged orders of annexation made by the county superintendent on March 17, 1948.

October 4, 1948, the State's Attorney of Hancock County, on the relation of Eldon W. McMillen, filed a complaint in *quo warranto* in the circuit court of Hancock County against district No. 316, the board of education of the district and the members of the board, charging that the school district and the board of education had no right to exercise their respective franchises over the annexed

territory and also challenging the election of the members of the board of education. Thereafter, McMillen was dismissed and Benjamin Bodecker and three others, all of whom resided in district No. 316 and had appeared as objectors in the proceedings before the county superintendent of schools, were substituted as relators. Answering, defendants, both corporate and individual, justified their authority by the proceedings incident to the formation of the district, the annexation of the territory in question, and the election of the board of education of the district. Plaintiffs' motion to strike the answer was denied, plaintiffs elected to abide by their complaint and motion to strike the answer, and judgment was entered for defendants. From the judgment so rendered, plaintiffs prosecute this appeal, a franchise being involved.

Plaintiffs admit that district No. 316 was lawfully established and confine their attack to the validity of the annexations of additional territory. The principal question presented for determination is the legality of the annexation of district No. 317. District No. 317 and the several common school districts were all annexed under sections 8-14 and 8-6 of the School Code, as they obtained in 1948. (Ill. Rev. Stat. 1947, chap. 122, pars. 8-14 and 8-6.) Section 8-14 provides two methods for changing the boundaries of a community unit school district, one being by a petition signed by a prescribed minimum number of legal voters residing in the territory proposed to be annexed and in the unit district affected, followed by an election which must carry in both the territory to be annexed and the unit district to be enlarged. The second method is referred to as follows: "The boundaries of a Community Unit School District may be changed by the County Superintendent of Schools * * * by annexing territory to or detaching territory from * * * [the] district by following the procedure set forth in Sections 8-6,

8-7 and 8-8 of the School Code in the same manner as is provided for in the change of boundaries of a Community Consolidated School District."

If, for purposes of clarity and according to the intent of section 8-14, the words "community unit school district" were substituted for the words "community consolidated school district," as they appeared in section 8-6 in 1948, section 8-6 would have read as follows: "The county superintendent under whose direction the district was established shall have the power to change the boundaries of community unit school districts so as: 1. To annex a common school district * * * to such community unit school district upon a petition signed by two-thirds of the voters of the common school district. * * * 3. To detach territory from any community unit school district and annex to an adjacent community unit school district * * * upon a petition signed by two-thirds of the voters residing within the territory described in the petition."

Plaintiffs contend that sections 8-14 and 8-6 do not authorize the county superintendent to annex one community unit school district, or its entire territory, to another upon a petition signed by two thirds of the voters residing in the district or territory seeking annexation. In particular, they argue that subsection 3 of section 8-6, relied upon by defendants, merely permits the annexation of part of the territory of a unit district to an adjacent like district, and that no other provision of section 8-6 authorizes the annexation of the entire territory of one unit district to another unit district upon a petition signed by two thirds of the voters of the district to be annexed. In short, plaintiffs assert the only way that all of the territory of one unit district can be annexed to another is by an election held in both districts under the general provisions of the first part of section 8-14.

Section 8-14 contains no limitation as to the size of the territory to be annexed either by election or by petition and

approval of the county superintendent of schools. Insofar as section 8-14 relates to annexations by petition, it merely provides: "The boundaries of a Community Unit School District may be changed by the County Superintendent of Schools * * * by annexing territory * * * by following the procedure set forth in Sections 8-6, 8-7 and 8-8 of the School Code." Likewise, subsection 3 of section 8-6 does not impose any limit on the amount of territory to be annexed to an adjacent community unit school district. Plaintiffs' contention that this subsection authorizes the annexation of part, but not all, of the territory of a community unit district is not persuasive. Under plaintiffs' construction of subsection 3, the annexation of ninety-five per cent of the territory of district No. 317 to district No. 316 by petition would be legal but, in order to effect an annexation of the remaining five per cent of the original territory of district No. 317 it would be necessary to hold an election in both districts. Constructions of statutes leading to absurd consequences are to be avoided. *Ketcham* v. *Board of Education,* 324 Ill. 314; *People* v. *Day,* 321 Ill. 552.

Plaintiffs also argue that the phrase "To detach territory from" appearing in subsection 3 of section 8-6 necessarily implies that some land must be left in the unit district from which territory is sought to be detached and annexed to another unit district. The statute, however, authorizes the detachment and annexation of territory, not school districts. It follows, therefore, that the area of the territory to be annexed, whether it be part, all or more than a whole unit district has no bearing upon the validity of an annexation. Under the School Code, territory does not exist in the abstract but is located within one or more of the several types of school districts provided for by the statute. Subsection 3 of section 8-6, read in the light of section 8-14, refers to the detachment of territory from one community unit school district and its annexation to

another for the manifest purpose of authorizing the annexation, by petition, of the territory of other community unit school districts, as distinguished from territory in other types of school districts. It is not a restriction on the size or area of unit district territory which can be annexed.

Plaintiffs further contend that the annexation of the territory of district No. 317 to district No. 316 amounted to a consolidation and that it is the uniform policy of the School Code that like districts cannot be united without the approval of the voters of each of the districts involved. While the School Code must be considered and construed as a single act, (*People ex rel. Tuohy* v. *Barrington Consolidated High School Dist.* 396 Ill. 129; *Greenwood* v. *Gmelich,* 175 Ill. 526,) and it is true that several sections authorize the consolidation of like districts upon approval of the voters residing in each district, either by petition or an election, (Ill. Rev. Stat. 1949, chap. 122, par. 4-30(2) (school districts within townships), par. 9-2 (common school districts), and pars. 10-21 to 23 (high school districts),) it cannot be said that the School Code is uniform in this respect. For example, as the result of an amendment adopted in 1949, subsection 1 of section 8-6, (Ill. Rev. Stat. 1949, chap. 122, par. 8-6,) now authorizes the annexation of two adjoining community consolidated school districts upon a petition signed by two thirds of the voters of the district seeking annexation. Furthermore, all sections of the School Code authorizing the consolidation of like districts deal specifically with the question of consolidation. It is to be observed, however, that the word "consolidation" does not appear in either section 8-14 or section 8-6 and that the sole subject matter of these sections relates to changes of boundaries of school districts by detachment or annexation. Manifestly, in the absence of any provisions for the consolidation of community unit school districts, the annexation of the territory of district

No. 317 to district No. 316, upon a petition signed by two thirds of the voters in district No. 317, does not amount to a consolidation. Nor can it be regarded as a subterfuge or evasion, since the voters residing in district No. 316 had no statutory right to vote upon the question of the addition of the territory of district No. 317.

Plaintiffs next contend that all the annexations in question are void because district No. 316 was not in existence in March, 1948, when the several petitions for annexation were signed, filed and acted upon. The contention made is founded upon certain provisions of sections 8-12 and 8-13 of the School Code. (Ill. Rev. Stat. 1947, chap. 122, pars. 8-12 and 8-13.) Sections 8-9, 8-10 and 8-11 provide for an election upon the proposition of establishing a community unit school district. Section 8-12 requires that, in the event the majority of the votes cast is in favor of the establishment of a community unit school district, the county superintendent shall order an election to be held within thirty days, for the purpose of electing a board of education for the district, and further provides that, within ten days after their election, the members of the board shall meet and organize by electing a president and secretary. Section 8-13 then provides that, "Upon the organization of any territory into a community unit school district, all school districts, including high school districts, located within said territory, shall be automatically dissolved and the board of education of said community unit school district shall establish a school or schools * * *." This section concludes with the provision that, "In the event the election effecting the organization of a Community Unit School District is held after school begins in any district involved in such consolidation, such consolidation shall not be effective until July 1 following the election."

Plaintiffs assert the "election effecting the organization of a Community Unit School District" is the election held for the purpose of selecting a board of education and con-

tend that, because the board of education of district No. 316 was not elected until July 31, 1948, the old school districts were not consolidated or dissolved and district No. 316 did not come into existence until that date. In the alternative, plaintiffs argue that if the election effecting the organization of district No. 316 was the election of February 28, 1948, held after the beginning of school in the underlying districts, then, under the last paragraph of section 8-13, the consolidation or dissolution of the old districts and, hence, the existence of the new district, did not take effect until July 1, 1948, Under either view, according to plaintiffs, district No. 316 was not in existence in March, 1948, when the petitions for annexation were signed and filed and the county superintendent ordered the annexations requested by the petitions. While it is fundamental that an attempted annexation of territory to a school district not in existence at the time the petitions for annexation were signed and filed is void, (*People ex rel. Woodward v. Board of Education,* 308 Ill. 578,) plaintiffs' assertion that sections 8-12 and 8-13 affect the date district No. 316 came into existence is unfounded. Neither of these sections has anything to do with the legal existence of a newly-created community unit school district. They refer exclusively to the organization of the board of education of the district and the date when the board can take over the operation of the schools within the district. It is settled that a board of education of a school district is a separate and distinct corporation from the school district itself. *People ex rel. Petty* v. *Thomas,* 361 Ill. 448.

Regardless of when the board of education of district No. 316 was organized, the district was established by the election held on February 28, 1948, and began its legal existence at that time. The existence of the district was not dependent upon the election of a board of education on July 31, 1948, for the adequate reason that no election of a board of education can be held until there is a school

district in being. (*People* v. *Deatherage,* 401 Ill. 25.) Moreover, while the election of the board of education should have been held within thirty days of the election establishing the district, the fact that an election of a school board is not held within the time prescribed by law does not nullify the formation or defeat the legal existence of a school district. (*People ex rel. Petty* v. *Thomas,* 361 Ill. 448.) As to district No. 316, the only effect of section 8-13 was to postpone the dissolution of the underlying districts and the right of the board of education to assume control of the schools within the territory of the district until the organization of the board. The district itself, however, began its legal existence on February 28, 1948, when it was established, and, with the exception of the limitations noted, possessed all the legal powers of a community unit school district from that day forward. District No. 316 being in existence in March, 1948, when the several petitions for annexation were signed, filed and acted upon, it follows that the annexations are not subject to attack upon the alleged ground that they were premature.

Lastly, plaintiffs contend that, even if the annexations are valid, the election, on July 31, 1948, of the members of the board of education of district No. 316, as enlarged, was illegal because the annexations did not become final and effective until August 26, 1948, when the State Superintendent of Public Instruction affirmed the orders of the county superintendent of schools. Although the normal term of members of a board of education of a community unit school district is three years, the length of the terms of the members of the first board is determined by lot so that two shall serve for one year, two for two years and three for three years. (Ill. Rev. Stat. 1949, chap. 122, par. 8-12.) After the first election, subsequent elections are held in April each year, (Ill. Rev. Stat. 1949, chap. 122, pars. 8-12, 7-4 and 6-4,) two, and every third year three, members of the board being elected annually. Three annual

elections have been held during the pendency of this action and the terms of all the individual defendants as members of the first board of education of district No. 316 have expired, the last three expiring in April of this year. The issue of the right of the individual defendants to hold office by virtue of the election of July 31, 1948, has ceased to exist and, therefore, will not be reviewed. *Central States Import and Export Corp.* v. *Liquor Control Com.* 405 Ill. 58; *Chicago City Bank and Trust Co.* v. *Board of Education,* 386 Ill. 508.

The judgment of the circuit court of Hancock County is affirmed.

*Judgment affirmed.*

Mr. JUSTICE GUNN, dissenting.