(No. 33451.—

J. J. PICKENS *et al.*, Appellees, *vs.* W. W. ADAMS, Appellant.

*Opinion filed November 23, 1955—Rehearing denied Jan. 16, 1956.*

Hᴇʀsʜᴇʏ, C.J., dissenting.

Mosᴇs Pᴜʟᴠᴇʀᴍᴀɴ, of Benton, for appellant.

Lᴀʏᴍᴀɴ & Jᴏʜɴsᴏɴ, and Wɪʟʟɪᴀᴍ W. Jᴏʜɴsᴏɴ, both of Benton, for appellees.

Mr. JUSTICE BRISTOW delivered the opinion of the court:

The appellant, W. W. Adams, is the grantee of a tax deed to the minerals underlying certain land in Franklin County. The appellees, former owners of this severed mineral estate, filed an application in the county court of Franklin County, seeking a reconveyance of said property pursuant to sections 255, 256, and 257 of the Revenue Act of 1939, as amended, herein referred to as the Reconveyance Act. (Ill. Rev. Stat. 1951, chap. 120, pars. 736-738.) The county court ordered the reconveyance, and a freehold being involved, the appellant appeals directly to this court.

In their application for reconveyance, filed October 21, 1951, the twenty-four appellees alleged, in substance, as follows: (1) that they were the owners of the minerals, including oil and gas, underlying certain described land in Franklin County; (2) that the appellant was the grantee of a tax deed dated October 15, 1948, duly recorded, conveying said minerals; (3) that neither the appellant, nor anyone claiming under said tax deed, is in possession of said property; (4) that neither the appellant, nor anyone claiming under said tax deed, had instituted proceedings in good faith to take possession within one year after the date of the deed; (5) that on August 16, 1951, the appellees, through their agent, tendered to appellant $1486.52, based on an estimate prepared by the county clerk of amounts expended by the appellant on the tax sale, subsequent taxes paid, interest at 7 per cent per annum, statutory fees and costs, and at the same time demanded reconveyance; (6) that the appellant refused said tender and refused to reconvey; and (7) that the affidavit of tender was filed with the county clerk as provided by statute.

The appellees asked that the court order the amount of the tender be deposited with the county treasurer for the benefit of the appellant, direct the sheriff or master in chancery to reconvey said premises in the name of the

appellant, and fine him in accordance with the provisions of the statute.

The appellant filed a motion to dismiss the application, which alleged that the act in question could not and was not intended to apply to a tax title to minerals, including coal, oil and gas, underlying land; that if the statute should be construed as applicable to minerals it was unconstitutional and in violation of the due process clause of the fourteenth amendment of the Federal constitution and section 2 of article II of the Illinois constitution; and that the act so construed would also be contrary to section 22 of article IV of the Illinois constitution.

The court overruled the motion to dismiss. The appellant then filed an answer, admitting that he was grantee of the tax deed, that the tender had been made, and that he refused the tender. But he denied the other averments of the application. As a part of his answer, the appellant also filed by way of affirmative defenses the points raised in his motion to dismiss and further alleged that the act, if construed as applicable to underground minerals, was so vague, indefinite and uncertain as to render it unconstitutional and void.

Said statutory provisions, originally enacted in 1909 and now incorporated into the Revenue Act of 1939 as sections 255, 256, and 257, are as follows:

"§ 255. Whenever the grantee of a tax deed to real estate, or any one claiming thereunder, shall not be in possession or occupation of said premises so claimed and shall not take or institute proceedings in good faith to take possession within one year after the date of the first tax deed under his alleged tax title, or whenever the grantee of a tax deed to real estate or any one claiming thereunder shall suffer the same to be forfeited to the State or again sold for taxes or special assessments before he has completed the payment of all taxes and special assessments legally assessed thereon for seven consecutive years, then

it shall be lawful for the owner of said real estate or his agent or attorney to pay or tender said tax title holder the amount of moneys paid out and expended by said tax title holder upon said sale with seven per cent (7%) interest per annum thereon, together with subsequent taxes and special assessments paid and the statutory fees and costs incurred, and that upon such payment or tender the said tax title holder shall reconvey the premises aforesaid to the owner thereof. The amount of such tender may be based upon an estimate prepared by the county clerk. * * *

"§ 256. Any tax title holder failing or refusing to reconvey said premises to the owner thereof on demand after payment or tender of the amounts due, as provided for in section 255 of this Act, shall be fined a sum not less than fifty dollars ($50.00) and not more than two hundred dollars ($200.00) for each offense. One-half of said fine shall go to said property owner and one-half to the county.

"§ 257. Upon affidavit or proof of tender being made, as provided by section 255 of this Act, the county court, in the same proceeding wherein the sale upon which said deed issued, may order, upon the service of such notice as the court shall direct, the amount of said tender to be deposited with the county treasurer and that the sheriff or any master in chancery in said county shall, in the name of the holder of such title, reconvey the premises to the owner thereof.

"Whenever the tax purchaser makes application to withdraw moneys deposited with the county treasurer he shall deliver to the county treasurer a reconveyance of said tax title to the owner who made said deposit."

Evidence presented to the trial court disclosed the following: The property in question is the mineral estate underlying about 700 acres of land in Franklin County. It is described in the tax deed to the appellant by thirteen parcels containing from 37 to 100 acres each, and the plat introduced shows that the parcels adjoin one another in

such a way as to produce a large, highly irregular-shaped piece of property. Prior to the time the appellant obtained his tax deed, appellee Pickens was the owner of the solid minerals under the land, and the other appellees were the owners as tenants in common of the oil and gas. The appellees owned the minerals only, and their property was assessed and taxed separately from the surface estate. The tax deed in question conveys only the underlying minerals to the appellant. As of the time of the hearing, the appellant, a resident of Denver, Colorado, had brought no legal or equitable action of any kind to take possession of the property, nor had he or anyone else ever endeavored to reduce the minerals to possession by drilling for oil and gas or digging for coal or other minerals. The tender was made by the appellees and refused by the appellant, as alleged, and the amount of the tender is not questioned as insufficient.

The appellant further introduced the testimony of a land man for various oil companies who testified that in the 48 counties of the State where oil and gas are produced the average is two dry holes for every producer; that in "wildcat" territory, the average is one producer to thirty dry holes; that the acreage in question is "wildcat;" and that the cost of drilling a well in the area is about $12,000. Subject to objection by appellees as to relevancy, it was stipulated that to justify a new coal mine in Franklin County in 1948 and later years at least 2000 acres in a compact, solid block would be needed and that the cost involved in sinking a shaft and equipping a new mine would be more than $500,000.

The appellant relies in substance upon three propositions for reversal, as follows:

(1) Because of the physical and economic impossibility or impracticability of taking actual possession of a mineral estate and because an action for possession thereof (ejectment) allegedly will not lie, the Reconveyance Act does not

apply to mineral estates held under tax deed, the holder of said tax deed being in constructive possession thereof.

(2) If construed as applying to mineral estates, the Reconveyance Act is void because its provisions are vague, indefinite and uncertain.

(3) If construed as applying to mineral estates, the Reconveyance Act is unconstitutional as violating the due process clauses of the State and Federal constitutions and as class legislation.

The appellees in their brief argue the case on the premise that the sole question presented is the constitutionality of the Reconveyance Act, and in substance says: (1) The possession contemplated by the legislature was actual possession, and that ejectment or a suit to remove cloud or quiet title will lie as to a mineral estate; (2) that the law favors redemptions from forfeitures; (3) that by statute severed minerals are a separate taxable estate in real estate; (4) that the legislature, under its plenary power to classify property for taxation, has properly adopted a classification of real estate which must be considered as including minerals under the constitutional provision requiring uniformity as to class; (5) that the judiciary cannot encroach upon the legislative domain; and (6) the appellant is getting just what he purchased, the fee in the property subject to the right of redemption.

In approaching the issues in this case, the general policy favoring redemption from forfeitures should be kept in mind. *Elmhurst State Bank* v. *Stone,* 346 Ill. 157; *Skach* v. *Sykora,* 6 Ill. 2d 215.

It is hornbook law in this State, as well as statutory law, that the owner of a separate mineral estate has a freehold estate in real estate separate from the surface estate to which all the usual rights and incidents of ownership of realty attach, including the burden of separate assessment and taxation. It follows that the owner of a mineral estate is entitled to all the usual remedies at law and in

equity for the protection of those rights. *McConnell* v. *Pierce*, 210 Ill. 627.

The legislature, under its plenary power to uniformly classify property for purposes of taxation, (Const. art. IX, sec. 1,) has adopted revenue statutes applying to taxation of real estate generally, providing for assessment, collection, forfeiture, tax sales, tax deeds, and redemption thereof, with no separate classification between surface, whole, and mineral interests.

Historically there have been no presumptions as to the validity or invalidity of tax deeds because of the many technical statutory prerequisites to their issuance. It is clearly recognized that a tax deed gives the holder color of title and right to reimbursement on redemption.

Under the Reconveyance Act here in question the holder of a tax title to real estate is given an option of two courses to follow within one year of the date of issue of the tax deed in which to bar redemption rights: (a) institute a suit to recover possession if he wishes to rely upon the validity of his tax deed; or (b) take possession in such manner as to assert his ownership. Thus the statute imposes the burden of affirmative action on the part of a tax title holder in either of two manners in order to bar redemption rights.

Appellant suggests that the possessory action of ejectment will not lie on behalf of the owner of a mineral estate, particularly as regards oil and gas because of their fugacious character, citing *Watford Oil and Gas Co.* v. *Shipman*, 233 Ill. 9. There it was said that a grant of oil and gas passes nothing which can be the subject of an ejectment or other real action. In *Jilek* v. *Chicago, Wilmington & Franklin Coal Co.* 382 Ill. 241, the *Watford case* was distinguished by the fact that it did not involve a severance of the surface and mineral estates in land but only an oil and gas lease by which the owner of land granted lessee the whole of premises for the purpose of drilling and operating for

oil and gas. Such a lease grants a privilege to enter and prospect but does not give any title to the oil and gas until such products are found. Although the *Watford case* is a correct decision of the factual issue there presented, it is no authority for the proposition that the owner of a separate mineral estate in land may not have the usual legal remedies, including ejectment, to protect his interest. The difference in factual situations between an oil and gas lease of the usual type and a deed conveying minerals was further emphasized in *People ex rel. Hargrave* v. *Phillips,* 394 Ill. 119, where it was held that though an oil and gas lease did not create a separate taxable estate yet a mineral deed did. This court has also recognized the right of an owner of an undivided interest in a separate mineral estate to partition. (*McConnell* v. *Pierce,* 210 Ill. 627.) It seems to be generally recognized in this State and elsewhere, that the owner of a mineral interest in lands may have an action in ejectment though the claimant may have no title to the surface of the soil (18 Am. Jur., p. 17, par. 13) or he may have a suit to quiet title (44 Am. Jur., p. 9, par. 8). Although oil and gas as such are incapable of ownership because of their fugacious character until actually found and produced, (*Triger* v. *Carter Oil Co.* 372 Ill. 182; *Poe* v. *Ulrey,* 233 Ill. 56,) yet a deed to minerals carries not only title to solid minerals but also what is necessary to acquire title to or possession of fugacious minerals, meaning the right to enter, explore and reduce them to possession. *Jilek* v. *Chicago, Wilmington & Franklin Coal Co.,* 382 Ill. 241.

The *Jilek case* further held that there can be no adverse possession of the mineral estate by the owner of the surface estate, even though the latter holds an instrument which purports to constitute color of title to the whole estate in the land. This followed an earlier decision that possession of the surface does not carry possession of the minerals and that nonuser or abandonment of the mineral

interest does not operate to terminate that estate. (*Uphoff* v. *Trustees of Tufts College,* 351 Ill. 146.) This follows the general principle, applied to limitations cases involving mineral estates separate from the surface, that possession of the surface, unaccompanied by any acts of dominion over the minerals, does not constitute adverse possession, but that, at the least, solid minerals must actually be removed from the ground or oil and gas actually produced in order to have adverse possession thereof. *Catlin Coal Co.* v. *Lloyd,* 180 Ill. 398; *Renfro* v. *Hanon,* 297 Ill. 353; *Kinder* v. *La Salle County Carbon Coal Co.* 301 Ill. 362; Summers, The Law of Oil & Gas, vol. 1A, sec. 138, pp. 307, 315-320.

An analysis of the foregoing cases indicates that the paramount title holder is never an adverse claimant and is never required to have more than constructive possession which follows and passes from grantee to grantee of such paramount title. Such possession is sufficient until challenged by superior title or supplanted by actual possession in an adverse claimant. Actual possession becomes of controlling importance where an adverse claim is asserted to the paramount title.

From the foregoing authorities the conclusion seems inescapable that the owner of a separate mineral estate has the right to bring an ejectment suit based on his claimed superior title to protect his freehold interest in real estate the same as the owner of the surface or the entire land, and that the owner of the paramount title must be considered as in constructive possession thereof unless and until an actual adverse possession thereof is taken by a third party claimant. The Reconveyance Act, by imposing the alternative of two affirmative acts on a tax title holder in order to bar redemption rights, puts such tax title holder in the same comparable position as a claimant by adverse possession or adverse title; that is, he must take actual possession of the mineral interest, or bring a real action in

reliance on the superiority of his title to eject the claimed paramount owner from his constructive possession. If such actual possession of minerals, solid or fugacious, is required of adverse claimants, it cannot be unreasonable to require it of tax title claimants.

The tax deed to appellant conveying the minerals had the effect of vesting in him title in fee to the entire mineral estate subject, however, to any redemption provided by law, as the deed recites. He did not receive an absolute, indefeasible fee, but only such interest as the county clerk could convey. (*Bowers* v. *Glos,* 346 Ill. 623.) He would retain his title unless and until divested of it by order of the county court and the making of a deed by the sheriff or master in chancery as provided in the Reconveyance Act. (*Layman* v. *Langlois,* 274 Ill. 559.) The act does not operate to extinguish his tax title, but merely imposes on him the necessity of taking actual possession or instituting a proceeding to secure possession within the time provided. (*Bowers* v. *Glos,* 346 Ill. 623.) Failing in either affirmative action, he is still entitled to his statutory redemption fees with interest before being divested of title, and thus has lost nothing.

Appellant contends that if the act is construed as applying to a mineral estate its provisions are so vague, indefinite and uncertain as to render it unconstitutional and void. He relies on the rule that where statutes either forbid or require the doing of an act in terms so vague that men of common intelligence must necessarily guess at their meaning and differ as to their application, they do not constitute due process of law, citing *Missouri Pacific Railroad Co.* v. *Commerce Com. ex rel. Brotherhood of Railroad Trainmen,* 401 Ill. 241; *Krebs* v. *Thompson,* 387 Ill. 471; *Boshuizen* v. *Thompson & Taylor Co.* 360 Ill. 160; *Parks* v. *Libby-Owens-Ford Glass Co.* 360 Ill. 130. The essence of the appellant's argument in this respect is that the act furnishes no guide as to what the owner of the minerals

must do or how far he shall go in taking possession of the mineral estate; that the act furnishes no guide as to how many producing oil or gas wells shall be drilled or how many dry holes sunk, nor as to where exploration shall take place on the 700 acres, whether in one place or many. The same reasoning is advanced as to coal and solid minerals.

There does not appear to be any ambiguity in the language of the Reconveyance Act, and therefore no problem of construction. The word "possession" as used in the act has a well defined and well understood meaning in the law. In *Gage* v. *Hampton,* 127 Ill. 87, at p. 94, it is said "It is not necessary that a man should live on property in order to obtain or hold possession of it. Possession of land may be acquired and held in different modes,—by enclosure, by cultivation, by the erection of buildings or other improvements, or, in fact, by any use that clearly indicates an appropriation to the use of the person claiming to hold the property." To constitute possession the land must be appropriated to the individual use in such a manner as to apprise the community or neighborhood that it is in the exclusive use and enjoyment of the person so appropriating it. (*Travers* v. *McElvain,* 181 Ill. 382, 387.) These statements as to the rule and concept of possession were made in cases dealing with the surface estate. However, from the cases of *Catlin Coal Co.* v. *Lloyd,* 180 Ill. 398; *Renfro* v. *Hanon,* 297 Ill. 353; *Kinder* v. *La Salle County Carbon Coal Co.* 301 Ill. 362; *Uphoff* v. *Trustees of Tufts College,* 351 Ill. 146; and *Jilek* v. *Chicago, Wilmington & Franklin Coal Co.* 382 Ill. 241, all hereinbefore referred to, the same rule was, in effect, applied with equal force to the separate mineral estate underlying lands, insofar as adverse possession thereof was concerned. Each of those cases requires some act of dominion over the minerals themselves to be asserted in order to create an adverse possession thereof. In the light of these past decisions, some

of which existed at the time of adoption of this act, it seems to be inconsistent and illogical to say that actual possession of minerals is necessary in cases involving the Limitations Act and to say that the statutory provisions for "possession" of minerals under the Reconveyance Act are unreasonable and that the legislature did not mean what it clearly and unambiguously said. To so hold in this case would by implication destroy the basis of the decisions in the limitations cases above cited. The claimant of the separate mineral estate underlying lands must know that in order to possess himself thereof he must do or perform such acts as clearly indicate an appropriation of the property and estate to his use. This, by the very nature of the property or estate, may involve drilling or sinking a shaft but there is nothing doubtful or uncertain about what has to be done. Nor is there any uncertainty about where he must drill or dig since his separate mineral estate is coextensive with the surface and extends throughout the area. There is nothing in the language of the Reconveyance Act itself which renders its meaning vague, indefinite or uncertain as applied to the underlying mineral estate in land. No question arises in this case as to whether the acts of the appellant were sufficient to constitute possession as that term is understood in the law, since the record clearly shows that nothing whatever was done by him to avail himself of the property conveyed by the tax deed. The contention of appellant in this respect, in our opinion, is without merit.

Appellant further contends that the Reconveyance Act, if applicable to tax titles to minerals, is unconstitutional because it has the effect of granting special and exclusive privileges in violation of section 22 of article IV of the constitution and violates due process because it lacks uniformity and does not affect alike each member of the community of the same class. Such contention is based on the argument that the tax title owner of the surface estate or

the whole land can readily and easily take actual possession of the property within the year provided in the act and at little expense, whereas the tax title owner of a mineral estate can take actual possession thereof only with difficulty and at great expense; that the effect is discrimination in favor of the former and against the latter; that a further effect is discrimination in favor of the former owner, prior to tax sale, of minerals, and against the former owner of surface lands because the tax title owner of surface land can easily comply with the act and perfect his title, whereas the tax title owner of the mineral estate cannot comply or attempt to comply with the act except at fantastic expense, which means that the owner of minerals can almost surely redeem under the act, whereas the former owner of the surface or whole land does not have the same likelihood of redemption.

The fallacy of this argument stems from the proposition stated at the start of this opinion that when there has been a severance of the surface estate from the mineral estate the law recognizes and protects two separate estates in the land. Each constitutes a freehold estate in real property and each may be separately assessed and taxed. The revenue laws of this State, of which the act here in issue is a part, must operate uniformly upon all property of the same kind or class, here the general class being real estate, under section 1 of article IX of the constitution. To adopt appellant's contention in this respect would be to deny owners of mineral estates in land their statutory right of redemption which is given by the legislature to all owners of real estate and would give the act here in question an unconstitutional effect. As an illustration, A owns the surface to Blackacre and B owns the minerals under Blackacre. Each estate is classified as real estate, each is taxed separately, each becomes delinquent and a tax deed on each is issued. The tax title purchasers of each fail to take possession or to institute proceedings in good faith within

one year as required by the act. Thereafter A is granted the right to redeem under the Reconveyance Act and B is denied the right to redeem under the same act. Not only is such result contrary to the general policy of the law to favor redemptions from tax sales, but such result would be contrary to the constitutional mandate of uniformity as to class.

The Reconveyance Act is in nature a redemption statute and forms a part of the revenue laws of this State. It is a part of the procedure set up in connection with the collection of taxes which the legislature has the power to enact and the tax buyer's title is subject to the statute when he makes his purchase. (*Bowers* v. *Glos,* 346 Ill. 623; *Elmhurst State Bank* v. *Stone,* 346 Ill. 157.) The act must operate uniformly upon all of the class subjected to taxation by the act—that is, real estate both below the surface as well as that upon it. To hold otherwise would overthrow all the well established rules as to the nature of the mineral estate, its incidents and appurtenant rights heretofore established by the court. We cannot hold that a mineral estate is like all other real estate in every particular except when its redemption from tax title is involved.

Appellant's argument in substance is merely that because of the inherent difficulty of possessing himself of that which he voluntarily bought at tax sale and to which he later received a tax deed, he should be excused from compliance with the act; that because the surface tax title holder can comply more readily and with less expense, the two stand on a different footing and the law cannot apply alike to both without being unconstitutional. Such a difference may exist in fact, but that does not confer upon this court the right to function as a legislature and revise the revenue laws. No one purchases a mineral estate in lands without full knowledge that to possess and enjoy it he must one day delve into the earth for it. He knows when he buys that such can be done only at considerable expense

and great effort. This is true whether he buys at a tax sale or direct from the owner. Appellant was apprised of these basic facts when he purchased the minerals under the lands in question. He is presumed to know the provisions of the statute requiring him to be in possession or to bring an action in good faith for possession within one year of the date of his deed. The act operated as a factor conditioning his purchase as much as the nature of the property he bought. *Bowers* v. *Glos*, 346 Ill. 623.

Accordingly, the order of the County Court of Franklin County directing reconveyance to appellees is affirmed.

*Order affirmed.*

Mr. Chief Justice Hershey dissenting:

I dissent from the majority opinion, because I do not believe the requirements pertaining to possession within one year were intended by the legislature to be applicable to the grantee of a tax deed conveying "the minerals" alone. Further, the construction of the statute adopted by the majority may well have the effect of nullifying the whole purpose of tax sales as a means of expediting the collection of taxes on severed mineral estates.

The two requirements (*i.e.*, acquiring possession or occupation within a year, or bringing an action within that time to take possession) must be considered separately.

In determining the application of the first of these requirements, "possession or occupation of said premises * * * within one year," it is necessary at the outset to ascertain the following: (1) What type of possession is meant—actual possession or constructive possession? (2) If actual possession, what does this mean with reference to "the minerals" underlying land?

There seems to be no dispute between the parties but that *actual*, physical possession was intended by the legislature. This court so interpreted the statute in *Bowers* v. *Glos*, 346 Ill. 623, a case involving the surface estate. In

that case we said, at page 629: "The act in question * * * imposes [upon the holder of the tax title] the necessity of taking actual possession, * * *." And if the legislature had in mind merely constructive possession, nothing further about possession would need be stated, since the deed itself would give the grantee constructive possession of the property. The use of the word "occupation" in conjunction with "possession" also supports this conclusion.

Next, what does *actual* possession of "the minerals" signify? Virtually the only cases wherein courts have touched on this problem are those in which disputes have arisen as to what constitutes adverse possession of a certain mineral.

In general, where the title to the surface and to the underlying minerals has been severed, possession of the surface, unaccompanied by any acts of dominion over the minerals, does not constitute possession of the minerals. (*Catlin Coal Co.* v. *Lloyd,* 180 Ill. 398; *Renfro* v. *Hanon,* 297 Ill. 353; *Kinder* v. *La Salle County Carbon Coal Co.* 301 Ill. 362; *Uphoff* v. *Trustees of Tufts College,* 351 Ill. 146.) Rather, something must be done with respect to the minerals themselves. At the minimum, mining or drilling operations must be instituted, and the apparent weight of authority is that solid minerals must actually be removed from the ground and oil and gas actually produced in order to have the requisite possession thereof. See cases cited and discussed in Summers, The Law of Oil and Gas, volume 1A, section 138, pages 307, 315-20.

By taking account of the foregoing, and reasoning further, I believe it can be demonstrated that this requirement that the grantee assume actual possession within one year from the date of the tax deed was not intended to apply to the grantee of a tax deed conveying only "the minerals."

*First,* it is apparent that it is a physical impossibility, reasonably speaking, for a grantee to assume actual possession of "the minerals" underlying land within one year.

Actually, he could not be certain that he even knew what, if any, minerals there were under the land. Perhaps he might through appropriate acts of dominion and control be able to reduce to possession a certain mineral or a portion thereof. But even then, such possession of one mineral (coal, for example) would not amount to actual possession of the others (such as oil, gas, etc.). And if one were to bring in a dry hole in an effort to produce oil (or twenty dry holes, for that matter), he would not have taken actual possession of any mineral at all.

Consider further the economic realities of the situation. The uncontradicted evidence is that in the counties of Illinois where oil and gas are produced the average is two dry holes for every producer. This particular area being "wildcat" territory, the average is one producer to thirty dry holes with the cost of drilling a single well being about $12,000. And it was stipulated that to justify a new coal mine in the area, a block of at least 2000 acres of land would be needed, with the cost involved in sinking a shaft and equipping a mine in excess of $500,000.

When the foregoing factors are contrasted with the small effort and expense necessary to take actual possession of a surface estate, the conclusion seems inescapable that the legislation in question, originally enacted in 1909 when oil and gas production was not widespread, was meant to apply only to the surface estate, where the requirement in both a physical and an economic sense could be complied with.

Constructions of statutes leading to absurd consequences are to be avoided. (*People ex rel. Bodecker* v. *Community Unit School Dist.* 409 Ill. 526; *Jones* v. *Pebler,* 371 Ill. 309; *Ketcham* v. *Board of Education,* 324 Ill. 314.) "The court should strive to avoid a construction which will tend to make the statute unjust, oppressive, unreasonable, absurd, mischievous, or contrary to the public interest. That construction should be accepted which will make the statute

effective and productive of the most good, as it is presumed that these results were intended by the legislature. In order to carry out the legislative intent, it is therefore apparent that the statute should be given a rational, logical and sensible interpretation. Any construction should be avoided, if possible, as contrary to the intent of the law-makers, that produces any effect at a variance with the commonly recognized concepts of what is right, just and ethical." Crawford, The Construction of Statutes, pp. 288-90.

To construe this statute as requiring the grantee of a tax deed conveying only "the minerals" to be in actual possession within one year, is to apply a requirement which, as explained above, cannot be met. Such a construction may thus nullify the whole purpose of tax sales as a means of expediting the collection of taxes on severed mineral estates. I am satisfied that such was not within the reasonable contemplation of the legislature.

*Second,* apart from the construction given to this statute in prior cases as requiring actual possession and the meaning of actual possession as related to minerals, I believe a further examination of the words of the statute, in and of themselves, indicates that the legislature did not intend to bind a tax-deed grantee of "the minerals" to the requirement under consideration. It is to be noted that the statute refers to one who is not in "possession or occupation" of said "premises." While there may be exceptions, generally one is not said to be in "occupation" of minerals, nor are minerals (particularly oil and gas) referred to as "premises." It is a fundamental rule of statutory interpretation that words of a statute are to be interpreted in their ordinary acceptation and significance and the meaning commonly attributed to them. (50 Am. Jur., Statutes, sec. 238.) So, even though underground minerals are real estate, it is hardly correct to say they are encompassed, in the context of this statute, within the term "premises." Likewise, while "occupation" and "possession" are often

used synonymously, it would be most unusual to speak of one as "occupying" the solid minerals or the oil and gas.

*Third,* there is a basic contradiction in saying that one may acquire actual possession of the minerals as real estate. For just as soon as one assumes actual possession (*i.e.,* mines coal, produces oil, etc.), such minerals so reduced to possession are no longer real property but become personal property. Therefore, if one were altogether successful in acquiring actual possession of the minerals, he would not then "be in possession or occupation" of any real estate whatever.

*Fourth,* there is an additional difficulty inherent in the construction adopted by the majority when we consider certain legal concepts relating to oil and gas. The Illinois view as to the ownership of oil and gas is stated in *Miller* v. *Ridgley,* 2 Ill. 2d 223, at pages 230-1 : "We have found that oil and gas, because of their fugacious nature, are incapable of an ownership distinct from the soil so long as they remain in the earth. Consequently the ownership of the surface determines the extent of ownership of oil underlying the surface. It is therefore impossible to distinguish the ownership of the oil in place in the earth from the ownership of the surface. However, we have found that the rights to this oil may be so reserved or conveyed as to create a separate freehold estate. Those rights are the rights to explore and find the oil, produce it, and to use or market it once it is reduced to physical possession." It follows that the appellant did not receive by his tax deed the ownership of the oil and gas in place in the ordinary sense, but the right "to explore and find the oil, produce it, and to use or market it once it is reduced to physical possession." As to the oil and gas, it may be said that immediately upon execution of the deed, the appellant came into actual possession of the *right* to explore for, produce and own, the oil and gas underlying the land. The fact he did not choose to *exercise* the right does not mean

he did not *possess* said right. Thus, by reason of the view of this court regarding the ownership of oil and gas underlying the ground, which concept in a sense is different from the theory of ownership applicable to the surface estate or to the solid minerals, a strong argument can be made that by merely being the grantee of the tax deed the appellant literally complied with the statute.

As to the other requirement, "take or institute proceedings in good faith to take possession within one year," it can be shown that even if this were surface property, this provision would not apply here. For while it is undisputed that the appellant did not bring any suit or action to gain possession of the property within one year from the date of the tax deed, it is also undisputed that no one else was in possession of the property or attempted to assert any rights therein.

The majority suggest that ejectment was available to the appellant. But whom would he sue, and what would he allege? He had no defendant, since no one else was in possession or asserting any possessory rights in the property. (See 28 C.J.S., Ejectment, sec. 32.) Consequently, if he were to have brought an ejectment action (against the appellees, for example,) in order to allege a cause of action he would have had to swear falsely.

The majority apparently consider the appellees as the paramount title holders even after the issuance of the appellant's tax deed. Therefore, they conclude that the appellant could have brought ejectment in reliance on the superiority of his title "to eject the claimed paramount owner from his constructive possession." This' assumes that after the issuance of the tax deed the appellees continued to have such a possessory interest in the property as would make them subject to an ejectment action filed by the appellant. But the majority recognize that "the tax deed to appellant conveying the minerals had the effect of vesting in him title in fee to the entire mineral estate subject,

however, to any redemption provided by law." Thus, apart from statutory redemption rights, the appellees had no interest or title in the property. Certainly they were not "paramount owners" with "constructive possession." (See 51 Am. Jur., Taxation, sec. 1078.) In short, after the tax deed. the appellees had no possessory rights in the property nor did they claim any; hence, the appellant had no occasion (or right) to bring an action against them "to take possession." Likewise, the same reasons can be advanced with regard to a suit to quiet title, for declaratory judgment, or any other remedy which may be conceived of as appropriate "to take possession" of the property.

I am thus convinced that the construction problem is decisive, but I believe the majority holding also raises serious constitutional questions. I consider that the effect of the decision is to create an unconstitutional classification. The two types of property are different. Indeed, they are so different that if the legislature should (as the majority state they did) require both a surface owner and the owner of "the minerals" to reduce his property to actual possession within one year in order to bar redemption rights, a situation results where the requirement becomes impossible to comply with in the one case and very easy to comply with in the other. Moreover, the properties are fundamentally different (as regards this possession requirement) in the sense that in reducing the minerals to actual possession, their character is changed from real to personal property. This, too, if developed further, would indicate a necessity for a separate classification which recognizes legal and economic realities and provides for reasonable procedures in both cases.